# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 20, 2011

No. 10-31061
Summary Calender

Lyle W. Cayce
Clerk

TOMMY FERNAND SANCHEZ, JR.; HAZEL SANCHEZ, as Tutrix of minor child Tyler Sanchez; TONYA SANCHEZ,

Plaintiffs–Appellants

v.

DANIEL EDWARDS, Sheriff, Tangipahoa Parish; HAMMOND CITY; JACOB SCHWEBEL; GARRETT BANQUER,

Defendants–Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:08-CV-1227

Before WIENER, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

The plaintiffs brought this § 1983 suit alleging excessive force after two of the defendants, Hammond Police Officer Garrett Banquer and Tangipahoa Parish Sheriff Deputy Jacob Schwebel, shot and killed the plaintiffs' father, Thomas Sanchez Sr. The district court granted summary judgment to the defendants after finding that the officers' actions were objectively reasonable

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-31061

and did not deprive Sanchez of his constitutional right to be free from the use of excessive force under the Fourth Amendment.  We affirm.

## I.  BACKGROUND

On March 7, 2007, several officers from the Tangipahoa Parish Sheriff's Office and the Hammond Police Department were conducting a surveillance operation of a residence in Ponchatoula, Louisiana, to investigate suspected illegal drug activity.  When the surveillance was discovered, the officers began searching the premises for drugs and questioning individuals who approached the residence.  Sanchez approached the residence in a 1992 Toyota Camry and pulled into the neighboring driveway.  Two of the officers at the residence, Officer Banquer and Deputy Schwebel, walked towards the vehicle.  Schwebel approached the driver's side, and Banquer approached the passenger's side.  Both Schwebel and Banquer were wearing clothing identifying themselves as law-enforcement officers.

After the officers verbally identified themselves as law-enforcement officers, they ordered Sanchez to stop the vehicle.  Instead, Sanchez reversed into the street.  Both officers shouted for him to stop.  Schwebel followed the car into the road and held his position by the driver's side window.  Banquer, in an attempt to remain on the passenger's side of the vehicle, crossed in front of the car while Sanchez reversed out of the driveway.  Once Sanchez's car had exited the driveway and while Banquer was positioned near the front of the car, Sanchez put the car into drive and accelerated in the direction of Banquer.  Witnesses in the neighboring yards heard the sound of tires spinning on the gravel over the shouts of both officers commanding that Sanchez stop the vehicle.  As the vehicle accelerated towards Banquer, both officers fired their service weapons at Sanchez.  The vehicle struck Banquer, continued down the road, and eventually came to a stop in a ditch.  Sanchez was hit by three of the shots fired by Schwebel and was pronounced dead at the scene.

No. 10-31061

On March 7, 2008, the plaintiffs filed this claim under 42 U.S.C. § 1983 against Schwebel; his employer, Tangipahoa Parish Sheriff Daniel Edwards; Banquer; and his employer, the City of Hammond, Louisiana.  The complaint alleged that the shooting violated Sanchez's constitutional right to be free from the use of excessive force.  The district court granted the defendants' motion for summary judgment, holding that Schwebel's and Banquer's actions were objectively reasonable.

## II.  STANDARD OF REVIEW

We review a grant of summary judgment de novo, applying the same standard as the district court.  *Apache Corp. v. W & T Offshore, Inc.,* 626 F.3d 789, 793 (5th Cir. 2010).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  We may affirm a grant of summary judgment "on any basis supported by the record."  *TIG Specialty Ins. Co. v. Pinkmonkey.com Inc.,* 375 F.3d 365, 369 (5th Cir. 2004).

## III.  ANALYSIS

### A.    Claims against Banquer and Schwebel

The defendants assert qualified immunity on appeal.[1]  "The doctrine of qualified immunity protects government officials 'from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Thus, the qualified-immunity inquiry has two prongs: (1) whether an official's conduct violated a constitutional right of the plaintiff, and (2) whether the right was clearly established at the time of the violation.  *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citation

---

[1] The district court did not expressly state that it was relying on qualified immunity, but that appears to be the basis for its grant of summary judgment.

omitted). "A court may rely on either prong of the defense in its analysis." *Id.* (citation omitted). Because we conclude that Sanchez's constitutional rights were not violated in this case, we need not consider the issue of whether those rights were clearly established.

"The use of deadly force for apprehension is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007) (citing *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)). In *Garner*, the Supreme Court defined the circumstances under which an officer's use of deadly force to stop a fleeing suspect is constitutionally reasonable:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

471 U.S. at 11–12. "The reasonableness of an officer's use of deadly force is therefore determined by the existence of a credible, serious threat to the physical safety of the officer or to those in the vicinity." *Hathaway*, 507 F.3d at 320. In making this determination, we must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396–97 (1989).

In *Hathaway v. Bazany*, we applied the *Garner* standard to facts that are legally indistinguishable from the facts in this case. *See* 507 F.3d 315–16. In *Hathaway*, a police officer stopped a vehicle in order to investigate a gang-related altercation in the area. *Id.* at 315. When the officer, who was on foot, was approximately eight-to-ten feet from the front right corner of the vehicle,

No. 10-31061

the vehicle suddenly accelerated towards him. *Id.* at 316. He attempted to get out of the way, but when he realized that he would not be able to do so, he decided to fire his weapon. *Id.* The vehicle struck the officer on the left leg, and the officer fired his weapon, although he could not recall whether he fired it before, during, or immediately after he was struck by the vehicle. *Id.* The shot hit the driver of the vehicle and killed him. *Id.*

On these facts, we held that the officer's use of deadly force was justified even though he could not specifically recall when he fired his weapon. *See id.* at 321–22. In doing so, we surveyed the relevant case law and identified two "central" factors in the reasonableness inquiry in these kinds of cases: (1) "the limited time [an] officer[ ] ha[s] to respond" to the threat from the vehicle; and (2) "'the closeness of the officer[ ] to the projected path of [the] vehicle.'" *Id.* at 321 (quoting *Waterman v. Batton*, 393 F.3d 471, 479 (4th Cir. 2005)) (final alteration in *Hathaway*). Given the officer's "close proximity" to the vehicle and the "extremely brief period of time" in which he had to react to the vehicle's movement towards him, we found that the officer was objectively reasonable in his perception of a threat of serious physical harm to himself and in his decision to respond to that threat with deadly force. *Id.* at 322.

Applying these factors to the fact of this case, we find that Banquer and Schwebel acted reasonably in their use of deadly force on Sanchez. Like the officer in *Hathaway*, Banquer and Schwebel had to take action quickly and decisively in response to an oncoming vehicle that was threatening an officer's safety. Sanchez ignored numerous commands from the officers to bring his vehicle to a stop. Both Banquer and Schwebel, who were the only eyewitnesses to the shooting, testified that Banquer was in front of Sanchez's Camry when Sanchez put the car into drive and drove forward. Because of the short period of time in which the officers had to react to Sanchez's abrupt change of direction and Banquer's obvious peril given his position in front of the vehicle, we have

5

absolutely no trouble finding that the officer's decision to use deadly force was reasonable under the circumstances.

The plaintiffs cite to *Lytle v. Bexas County, Texas*, 560 F.3d 404 (5th Cir. 2009), in support of their appeal, but *Lytle* is distinguishable.  In *Lytle*, we held that a police officer was not entitled to qualified immunity when the officer fired shots through the rear window of a vehicle driven by a fleeing suspect. *Id.* at 417.  We based our decision on evidence suggesting that the officer was three-to-four houses away from the vehicle when he fired his weapon and that the vehicle was moving away from, rather than towards, him at the time.  *Id.* at 412.  By contrast, in this case the record shows that Banquer and Schwebel were within feet of Sanchez's car when they fired their weapons and that Banquer's shots struck the front windshield and hood of the car.  Thus, our decision in *Lytle* is far from relevant, as there is no credible evidence in the record in this case to suggest that the officers fired their weapons at a fleeing vehicle that posed no risk to either officer.

The plaintiffs also assert that a statement made by Ladrelle Wells, a woman who was detained by the police after she approached the residence, creates a genuine issue of material fact.  In her statement, which she made to the police shortly after the incident, Wells described the events as she had observed them from her position in the adjacent yard.  She stated that after the Camry had reversed into the street, but before it had begun to accelerate forward, Banquer was standing near the passenger's side door of the car.  The plaintiffs argue that if Banquer was not in front of the car when it accelerated forward, then he was not in danger and the officers' use of deadly force was unreasonable.

Wells's assertion regarding Banquer's position vis-à-vis Sanchez's car, however, is exceptionally weak evidence.  Her assertion contradicts the other parts of her statement to the police and her own deposition testimony.  In her

deposition, she testified that she did not see any part of the incident after the Camry reversed out of the driveway.  Also, in both her statement to the police and her deposition, she consistently maintained that she did not witness the shootings because it was nighttime, she was far away from the incident, and she was looking in another direction.  The only eyewitnesses to the shooting, Banquer and Schwebel, contradict Wells's assertion, and there is no dispute that Banquer's shots struck the front windshield and hood of Sanchez's car.  The plaintiffs' own expert testified to the possibility that Banquer fired his weapon from a position between the front headlights of the vehicle, and all of the other experts testified that it is impossible to determine the exact location of Banquer when he fired the shots.

Given that Wells's inconsistent and contradicted assertion is the *only* evidence in the record on which the plaintiffs can rely, we find that it is simply insufficient to create a genuine dispute of material fact to get past summary judgment.  *See Hathaway*, 507 F.3d at 319 (reiterating the uncontroversial proposition that a plaintiff needs more than a "scintilla of evidence" to create a genuine dispute of material fact).  On the basis of the record in this case, no reasonable juror could find that Banquer and Schwebel acted unreasonably under the circumstances, and therefore we conclude that they are entitled to qualified immunity.

**B.    Claims against Sheriff Edwards and Hammond City**

The plaintiffs also bring municipal-liability claims under § 1983 against Sheriff Edwards and Hammond City.  To succeed on such a claim, the plaintiffs must show an underlying constitutional violation resulting from an official policy.  *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978).  As the plaintiffs are unable to show an underlying constitutional violation, they have failed to meet their burden under the *Monell* standard.

AFFIRMED.