# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
October 21, 2021

Lyle W. Cayce
Clerk

No. 21-10020

Thomas Irwin,

*Plaintiff—Appellant*,

*versus*

J. Santiago, Officer, in his individual capacity; R. Roberts, Officer, in his individual capacity,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-2926

Before Dennis, Higginson, and Costa, *Circuit Judges*.
James L. Dennis, *Circuit Judge*:[*]

In this case, two police officers shot Thomas Irwin as he was leaving the scene of a traffic incident against their orders to stop. Irwin's vehicle approached but narrowly avoided one of the two officers. As Irwin passed by that officer, both officers shot his vehicle five times, shattering the driver's

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-10020

side window and rendering two serious but non-fatal wounds. Irwin filed a § 1983 suit claiming excessive force. On a summary judgment motion from the officers, the district court held that there was a material issue of fact as to whether the officers' use of deadly force was objectively reasonable under the circumstances, in particular because it was unclear whether Irwin's vehicle posed an immediate threat given the distance and suddenness of the event. However, the court also held that there was no law clearly establishing that the officers' conduct was objectively unreasonable, and therefore the officers were entitled to qualified immunity. We AFFIRM.

## I.

On June 8, 2018, Irwin was driving under the influence of alcohol and marijuana in Garland, Texas, when, after being distracted by his girlfriend's children in the backseat, he ran off the road, hit a tension wire, and drove a short distance into a cemetery enclosed by a chain-link fence.[1]

After coming to a stop, Irwin reversed back out into the street. Stopped in traffic just ahead of Irwin were Garland City Police Officers J. Santiago and R. Roberts. As Irwin was reversing, the officers got out of their marked vehicle with their weapons drawn. Officer Roberts approached Irwin's vehicle from the rear on the driver's side, while Officer Santiago approached from the front. Both officers gave Irwin verbal commands to stop his vehicle.

---

[1] Both parties relied on video evidence taken from Officer Santiago's bodycam and from a nearby gas station. They may be viewed at:

(1) https://www.ca5.uscourts.gov/opinions/unpub/21/21-10020-BodyCam.mp4;

(2) https://www.ca5.uscourts.gov/opinions/unpub/21/21-10020-Surveillance.mp4.

No. 21-10020

At this point, Irwin's account and the officers' diverge. According to Irwin, as his vehicle came to a stop after he reversed back into the street, Officer Santiago was standing "toward the front driver's side" and Officer Roberts was "toward the back driver's side." Neither officer "was positioned directly in front or in the pathway of Irwin's vehicle." Irwin then turned his steering wheel to the right, away from Officer Santiago and toward the sidewalk. He began to "slowly roll his vehicle forward." Officer Santiago was near the left side of the vehicle as it passed by on the curb, while Officer Roberts stood in the roadway to the back of Irwin's vehicle and in the adjacent lane. As Irwin passed near Officer Santiago, having already driven past Officer Roberts, both officers began shooting. Multiple bullets struck Irwin's vehicle, shattering the driver's side front window. Two bullets hit Irwin in the arm and leg. Irwin continued driving away and was later apprehended in a parking lot. As a result of the shooting, Irwin now has a metal plate in his right arm and a bullet still lodged in his left leg. He has been permanently disfigured.

Irwin filed a § 1983 suit claiming, *inter alia*, that Officers Santiago and Roberts used excessive force in violation of the Fourth Amendment. The officers moved for summary judgment on Irwin's claims and on their defense of qualified immunity. After closely considering the evidence and the law, the district court held that there was a genuine dispute of material fact as to whether the officers were objectively unreasonable in using deadly force. Specifically, the court found that a reasonable jury could conclude from the evidence establishing the distance between Officer Santiago and Irwin's vehicle that the officer was under no immediate threat from Irwin and therefore the decision to shoot violated the Fourth Amendment.

The district court also held that, though a jury could conclude the officers violated the Fourth Amendment, that violation would not be one of "clearly established law" and therefore the officers were entitled to qualified

immunity even under Irwin's version of the facts. The court therefore granted summary judgment to the officers. This appeal followed.

## II.

We review grants of summary judgment *de novo*, applying the same standard as the district court. *Thompson v. Mercer*, 762 F.3d 433, 435 (5th Cir. 2014). "Summary judgment is appropriate where the record and evidence, taken in the light most favorable to the non-moving party, show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). Since we, like the district court, must view the evidence in the light most favorable to the non-movant, we accept Irwin's version of the disputed facts and draw all inferences in his favor. *Tolan v. Cotton*, 572 U.S. 650 (2014). "If the defendant[s] would still be entitled to qualified immunity under this view of the facts, then any disputed fact issues are not material," and the district court's grant was proper. *Lytle v. Bexar County, Texas*, 560 F.3d 404, 409 (5th Cir. 2009).

## III.

A defendant is entitled to qualified immunity if his conduct did not violate a right that was clearly established at the time. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). To be clearly established, it is not enough that the right, as a general matter, exists. The law must also establish that the particular conduct of the defendant that is at issue violates that right. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 640 (citation omitted).

No. 21-10020

## A.

It has long been the case that using deadly force to stop a fleeing suspect can violate the Fourth Amendment. *Tennessee v. Garner*, 471 U.S. 1, 20–21 (1985). Whether an officer's use of deadly force is unconstitutional depends on whether it is objectively reasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Courts consider several factors in answering this question in the context of fleeing vehicles, the "most important" of which is "whether the suspect poses an immediate threat to the safety of the officers or others." *Id.* at 396; *see also Malbrough v. Stelly*, 814 F. App'x 798, 803 (5th Cir. 2020). The district court identified this fact as the "primary dispute" in the case. Since the only pedestrians in the area at the time the officers shot Irwin were the officers themselves, the question narrowed ever further: whether Irwin posed an immediate threat to the officers.

In our circuit, there are two particular facts that have emerged as highly relevant to determining whether a moving vehicle poses an immediate threat to a police officer: "the limited time the officers had to respond and 'the closeness of the officers to the projected path of the vehicle.'" *Hathaway v. Bazany*, 507 F.3d 312, 321 (5th Cir. 2007) (quoting *Waterman v. Batton*, 393 F.3d 471, 479 (4th Cir. 2005)). In this case, the district court found that only seventeen seconds elapsed between the officers exiting their vehicle and discharging their weapons as Irwin drove by Officer Santiago. The court also found that the evidence of how close Officer Santiago was to the path of the vehicle was genuinely disputed, and that, viewed in the light most favorable to Irwin, the evidence could be construed to show that Officer Santiago was outside the path of Irwin's vehicle even though he was still close to the front of it as Irwin began moving.

No. 21-10020

We agree with the district court that a reasonable factfinder could conclude from this evidence that Officer Santiago may not have been in immediate danger of harm by Irwin's operation of his vehicle in disobedience of the Officers' orders to stop, and therefore a material dispute about the objective reasonableness of the Officers' conduct existed. The district court did not err in denying summary judgment to the Officers on the merits of Irwin's Fourth Amendment claim.

**B.**

Turning to the qualified immunity inquiry, we conclude that the district court did not err in deciding that there is no clearly established law demonstrating that the officers' conduct constituted an excessive use of force. The particular facts that are material here—Irwin's failure to heed officers' commands to stop, Officer Santiago's position, and the brief period of time it took for the Officers to perceive and react to the direction of Irwin's vehicle—are not sufficiently analogous to the facts of our cases finding excessive force such that officers Santiago and Roberts would have been "on notice" that their conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Irwin presents, and we have only been able to find, circuit precedent establishing a Fourth Amendment violation where an officer was positioned *behind* a vehicle that was *moving away from him* as he fired. In *Lytle*, it was assumed for the purposes of summary judgment that the officer shot a vehicle driving away from him that was "three to four houses down the block." 560 F.3d at 409. Similarly, in *Flores v. City of Palacios*, a police officer approached a parked car from behind. While still at some distance, the car started to pull away and the officer shot it in the rear bumper. 381 F.3d 391, 395, 399 (5th Cir. 2004).

In contrast, Officer Santiago was standing "toward the front" of Irwin's vehicle as it started to move forward, and then stood at its side as he

fired. This is significant because the projected path of Irwin's vehicle was in the officer's direction, at least generally, whereas in *Lytle* and *Flores* the vehicle was moving away from the officer. Considering that there are also cases where an officer shot at a car moving directly at him and no Fourth Amendment violation was found, *see Hathaway*, 507 F.3d at 316, 322; *Sanchez v. Edwards*, 433 F. App'x 272, 274–75 (5th Cir. 2011),[2] we think that it was not a matter of clearly established law that Officers Santiago and Roberts were unreasonable in firing on Irwin's vehicle.

We therefore AFFIRM the district court's grant of summary judgment for the defendants on the basis of qualified immunity.

---

[2] We do not suggest that these cases require the district court to have held that the officers did *not* violate the Fourth Amendment. These cases contain significant factual differences from the case here. In both *Hathaway* and *Sanchez*, for instance, the plaintiff's vehicles ultimately struck the officers, confirming that they were indeed in the path of the oncoming vehicle. *Hathaway*, 507 F.3d at 316; *Sanchez*, 433 F. App'x at 274. There is no such evidence here, and we do not pass judgment on the district court's determination of the genuineness of the factual disputes over the evidence.