# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fif h Circuit

**FILED**

October 31, 2017

Lyle W. Cayce
Clerk

No. 16-10856

———————

ERIN LINCOLN, Individually and as Representative of the Estate of John Lincoln,

      Plaintiff - Appellant

v.

PATRICK TURNER,

      Defendant - Appellee

————————————

Appeal from the United States District Court
for the Northern District of Texas

————————————

Before HIGGINBOTHAM, SMITH, and HAYNES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The police shot and killed John Lincoln as he stood beside then eighteen-year-old daughter Erin. She here alleges that after she collapsed and cried out, Officer Patrick Turner picked her up, threw her over his shoulder, and carried her to a police car, where she sat handcuffed against her will. Erin brought suit under 42 U.S.C. § 1983 against Turner, alleging unreasonable seizure and excessive force. The district court sustained Turner's defense of immunity and granted his motion to dismiss. We AFFIRM.

No. 16-10856

## I.

As this case comes to us from a Rule 12(b)(6) motion to dismiss, we accept Erin's well-pleaded facts as true.[1] Erin alleges that on the night of December 26, 2013, her father, John Lincoln—diagnosed with bipolar disorder and out of his medication—took a gun from his father's house and went to his mother Kathleen's home. When John arrived, Kathleen was not home, but Erin was.

John's father believed that John was a threat to Kathleen and called John's sister Kelly, an Arlington Police Department officer. Kelly then called the Colleyville Police Department and told them that John might pose a threat to Kathleen. A large SWAT team arrived, including officers from multiple police departments. A police dispatcher contacted Erin, who explained that her father would not hurt her. As the stand-off continued, Erin attempted to calm her father. At one point the phone rang, and Erin, knowing it was the police, urged her father not to answer it "because it would upset him." John answered the phone and became upset.

At some point, John began opening the front door and shouting at the police while holding his father's gun. Every time John opened the door, Erin was standing next to him. The final time John opened the door, the police shot and killed him.

When Erin fell to the ground beside John and cried out, Turner handcuffed her and threw her over his shoulder. Erin alleges that "Turner carried her into the backyard, hung her roughly over the back gate and then threw her onto her feet. Erin was then put [] in the back of a police car in handcuffs;" she "did not fight, struggle, or resist;" and she was eventually taken

---

[1] *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). The background of this case is summarized in a recent opinion stemming from the same set of facts. *Lincoln v. Barnes*, 855 F.3d 297, 299 (5th Cir. 2017).

No. 16-10856

to the police station by another officer, where she was interrogated for five hours.

Erin sued several police officers, including Turner.[2] She filed her original complaint in October 2015 and she amended several months later. The district court granted Turner's motion to dismiss. It found that Erin insufficiently pled her claim as required by Rule 8(a)(2), and alternatively that Erin did not overcome qualified immunity.

Erin appeals.[3]

## II.

"We review a district court's grant of a motion to dismiss for failure to state a claim de novo, 'accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff.'"[4] "The grant of a motion to dismiss based on qualified immunity similarly is reviewed de novo."[5]

## A.

Federal Rule of Civil Procedure 8(a)(2) states: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]"[6] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial

---

[2] Kathleen Lincoln was originally named as a plaintiff, but she voluntarily dismissed her appeal. Additionally, because of a clerical error, Jimmy Rodriguez was initially named as a defendant-appellee in this appeal. Plaintiffs later moved to correct their mistake, and the appeal as to Rodriguez was dismissed.

[3] The district court had jurisdiction under 28 U.S.C. §§ 1331, 1343. This Court has jurisdiction to review final decisions under 28 U.S.C. § 1291.

[4] *Bustos*, 599 F.3d at 461 (quoting *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)); *accord Whitley v. Hanna*, 726 F.3d 631, 637 (5th Cir. 2013).

[5] *Whitley*, 726 F.3d at 637.

[6] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 ("8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'") (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

No. 16-10856

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[8]

Turner moved under Rule 12(b)(6) for failure to state a claim. Citing *Twombly*[9] and *Iqbal*,[10] the district court concluded that "plaintiffs have alleged little more than bare legal conclusions" and that "[t]he facts pleaded do no more than permit the court to infer the possibility of misconduct and that is not enough to allow plaintiffs to go forward with their claims."[11]

Erin argues that she sufficiently alleged claims for unconstitutional seizure and excessive force.[12] She contends that the district court erred when it stated there was no allegation of Erin having contact with Turner, since she "allege[d] that Turner cuffed her, physically threw her over his shoulder, threw

---

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (internal citations omitted).

[8] *Twombly*, 550 U.S. at 555 (internal citations omitted); *accord Iqbal*, 556 U.S. at 678.

[9] 550 U.S. 544 (2007).

[10] 556 U.S. 662 (2009).

[11] Many difficulties of determining the adequacy of pleadings could be avoided by the district court's ordering a plaintiff to "file a reply tailored to an answer pleading the defense of qualified immunity." *Schultea v. Wood*, 47 F.3d 1427, 1433–34 (5th Cir. 1995). *See also Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) (noting that when a defendant asserts a qualified immunity defense, the court must first "apply[] [the] general pleading standard to the complaint" and "*may* [then], *in its discretion*, insist that a plaintiff file a reply"). The district court may require particularized pleading of facts responsive to the defendant's plea of immunity. Officer Turner filed a Motion to Dismiss and, in the Alternative, for a Rule 7(a) Reply to Immunity Defense. The district court granted the motion to dismiss without ordering a Rule 7 reply.

[12] After summarizing cases concerning unconstitutional *seizures*, Erin concludes that she has "stated a claim that the *force* used upon her was *excessive* and unreasonable under the circumstances" (emphasis added). Erin's reference to excessive force here is likely a typo, as the preceding argument concerned her seizure claim, not her excessive force claim.

her over a fence and then physically placed her, against her will and still handcuffed, into the back of a patrol car." Erin also maintains that she sufficiently alleged the elements of an excessive force claim; specifically, she maintains that she alleged (1) "a severe emotional injury," (2) "which resulted from a use of force that was clearly excessive," and (3) "[that] excessiveness . . . was clearly unreasonable."

Turner counters that "Erin has not pleaded sufficient facts to show that [he] unreasonably seized her as a material witness and suspect after John was shot," and that with respect to excessive force, Erin pled "only de minimis injuries consistent with a constitutional handcuffing" and did not show that Turner directly caused the injuries or "plead facts sufficient to show that the force used was excessive in light of the hostage/criminal situation."

We hold that Erin sufficiently pled unconstitutional seizure and excessive force, and address each in turn.

1.

The Fourth Amendment states in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"[13] The extent of this constitutional protection varies with the type of seizure at issue. "The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest."[14] "This court has recognized that there are different 'tiers of citizen-police contact for purposes of [F]ourth [A]mendment analysis.'"[15] That is:

---

[13] U.S. CONST. amend. IV.

[14] *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975) (citing *Davis v. Mississippi*, 394 U.S. 721 (1969); and *Terry v. Ohio*, 392 U.S. 1, 16–19 (1968)).

[15] *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014) (quoting *United States v. Zukas*, 843 F.2d 179, 181 (1988)).

No. 16-10856

The first tier involves no coercion or detention and does not implicate the fourth amendment. The second tier, an investigatory stop, is a brief seizure that must be supported by reasonable suspicion . . . Finally, the third tier is a full scale arrest [which] must be supported by probable cause.[16]

*Brown v. Texas*[17] articulated a test that has been used to analyze detentions not easily categorized as investigatory stops or arrests, such as "stop and identify" detentions,[18] check-point stops,[19] and some witness detentions.[20] Detentions that begin as one type can transform into another.[21]

As we will explain, the claimed detention here could be classified as a *de facto* arrest requiring probable cause, an investigatory stop that must be supported by reasonable suspicion, or a witness detention subject to the *Brown* balancing test.[22] Rather than press these categories, whose boundaries are blurred, we treat each type of detention in turn, and conclude that Erin has sufficiently stated a claim under all three standards.

a.

Based on the allegations in her amended complaint, Erin's detention may rise to the level of a *de facto* arrest that must be supported by probable

---

[16] *Id.* (internal quotation marks omitted).

[17] 443 U.S. 47 (1979).

[18] *See Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.*, 542 U.S. 177, 184 (2004).

[19] *See Illinois v. Lidster*, 540 U.S. 419, 426–27 (2004).

[20] *See Walker v. City of Orem*, 451 F.3d 1139, 1148 (10th Cir. 2006); *Maxwell v. Cty. of San Diego*, 708 F.3d 1075, 1083 (9th Cir. 2013). *But see Lincoln*, 855 F.3d at 303, holding that *Brown's* balancing test should not apply to Erin's subsequent detention at a police station because the case "expressly limited its analysis to '[t]he reasonableness of seizures that are far less intrusive than a traditional arrest.'" 855 F.3d at 303 (citing *Brown*, 433 U.S. at 50).

[21] For instance, "[a] detention initially authorized by *Terry* can, due to its duration, transform into the equivalent of an arrest." *Massi*, 761 F.3d at 522 (citing *United States v. Zavala*, 541 F.3d 562, 579 (5th Cir. 2008)).

[22] The district court characterized Turner's alleged actions as "detain[ing] a witness . . . while an investigation was underway." Erin argues that her detention was unjustified regardless of whether she was held as a witness or a suspect. And Turner refers to Erin as both a "material witness" and a "potential suspect."

cause. "An arrest occurs when, 'in view of the all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'"[23] This is a fact-specific inquiry.[24] Here, Erin alleges that Turner handcuffed her and placed her in the back of a police car against her will for approximately two hours.[25] Taking these facts as true, a reasonable person could "believe that her freedom was restrained to a degree typically associated with arrest."[26] Such a detention must be supported by probable cause. "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'"[27] Importantly, "[t]he facts must be known to the

---

[23] *Massi*, 761 F.3d at 522 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

[24] *See, e.g.*, *Freeman v. Gore*, 483 F.3d 404, 413 (5th Cir. 2007) (holding that an arrest occurred where police handcuffed a woman's hands behind her back and placed her in a police car for 30 to 45 minutes). *But cf. United States v. Jordan*, 232 F.3d 447, 450 (5th Cir. 2000) (holding that "[h]andcuffing a suspect does not automatically convert an investigatory detention into an arrest requiring probable cause," where handcuffs are used long enough to frisk a suspect who did not fully comply with police orders).

[25] Further, the amended complaint alleges that Erin's aunt Kelly spoke with police officers on the scene twice during Erin's detention, and that both times the officers refused to release Erin into her aunt's car. Erin does not claim that she knew this when she was being detained, so it does not go to whether she believed she was not free to leave.

[26] *Freeman*, 483 F.3d at 413. Turner states that there is "no rigid time limit on the duration of an investigatory detention," and points to an Eighth Circuit case holding that a three-hour detention did not constitute *de facto* arrest. *See United States v. Maltais*, 403 F.3d 550, 556 (8th Cir. 2005). While Turner is correct that we have never set such a time limit, his reliance on *Maltais* is misplaced. In that case, the court pointed to several factors that justified a longer detention—most importantly, that the two men were alone in a remote area near the Canadian border late at night, "making flight a distinct possibility" and resulting in a longer-than-average response time. *Id.* at 556. Indeed, the court noted that "a detention of this length would be unreasonable under different circumstances," but held that "the unusual situation here made it impractical for law enforcement officials to respond any sooner than they did," thus justifying a long detention. *Id.* at 556–57. We see no facts alleged in the amended complaint that would require such an extended investigatory detention here.

[27] *Haggerty v. Texas S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)).

officer at the time of the arrest; post-hoc justifications based on facts later learned cannot support an earlier arrest."[28]

Turner argues that "[s]everal crimes and potential crimes had taken place, and police were about to investigate."[29] Yet Turner only connects Erin to one potential crime: interfering with police officer's attempts to communicate with John before the shooting. To support this claim, Turner points to Erin's admission in the amended complaint that she urged her father not to answer the phone when the police called. However, while Erin included this information in the amended complaint, there is no indication that the police knew about this at the time Turner seized Erin.[30] Nothing else in Erin's amended complaint could lead to the conclusion that Erin had committed or was going to commit an offense. In short, "the facts as alleged in the amended complaint do not permit a conclusion that [Turner] had probable cause to arrest [Erin] [for interference] at the time of the arrest[]."[31] Said differently, the "factual content" pled "allows the court to draw the reasonable inference that the defendant is liable for" an unconstitutional arrest.[32]

---

[28] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009); *accord Freeman*, 483 F.3d at 414 ("Although the probable cause inquiry is an objective one, it must nevertheless be conducted in light of the actual facts known to the officer at the time of arrest.").

[29] In the district court, Turner argued, "there was probable cause for Officer Turner to believe that it was lawful to detain Erin Lincoln (as her role was not known and as she was hysterical and volatile). Furthermore, based upon that same information and circumstances, a reasonable Police Officer in Officer Turner's situation could have concluded that Erin Lincoln was an imminent threat to herself and others." Moreover, he argued that exigent circumstances justified his restraint and removal of Erin. On appeal, Turner abandons all three of these rationales.

[30] In response to this argument, Turner argues that Erin attempts to improperly shift the burden. Turner has no burden at this stage. *See* Bustos, 599 F.3d at 461 (plaintiff must plead sufficiently to state a claim). However, the facts as alleged, and when viewed in the light most favorable to the plaintiff, demonstrate that Turner did not know that Erin urged her father not to answer up the phone.

[31] *Club Retro*, 568 F.3d at 204.

[32] *Iqbal*, 556 U.S. at 678.

No. 16-10856

b.

Even if Erin's seizure were treated as a less intrusive investigatory detention, she states a plausible claim. "[U]nder the 'very narrow exception' announced in *Terry v. Ohio*, police officers may briefly detain a person for investigative purposes if they can point to 'specific and articulable facts' that give rise to reasonable suspicion that a particular person has committed, is committing, or is about to commit a crime."[33]

Turner argues that he had reasonable suspicion to detain Erin, emphasizing that legal conduct can support reasonable suspicion; that "there is no rigid time limit on the duration of an investigatory detention"; and that, based on the events leading up to the police shooting and that an investigation was about to commence, "officers could have reasonably suspected that Erin may have been involved in criminal activity." Turner specifically argues that reasonable suspicion existed that Erin was "part of a larger criminal enterprise" including interference with police officers. We disagree.

Turner does not clarify what "larger criminal enterprise" he repeatedly refers to. In any event, suspicion of unidentified criminal activity is not the

---

[33] *United States v. Monsivais*, 848 F.3d 353, 357 (5th Cir. 2017) (internal citations omitted); *accord United States v. Sokolow*, 490 U.S. 1, 7 (1989) ("[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause.").

There is some discussion about whether under Tex. Penal Code Ann. § 38.15, Erin's conduct constituted permissible "speech only" interference, and whether such an argument was waived. Section 38.15 states in relevant part: "(a) A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with: (1) a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law[.]" TEX. PENAL CODE ANN. § 38.15 (West). However, "[i]t is a defense to prosecution under this section that the interruption, disruption, impediment, or interference alleged consisted of speech only." *Id.* at § 38.15(d). Turner states in his brief, "there is no indication that Erin was charged with or that Officer Turner detained her for interference with public duties." We need not decide that question here.

kind of "particularized and objective basis for suspecting legal wrongdoing"[34] that is necessary to support detention. Nor does the case law support a finding of reasonable suspicion on these allegations. The cases that Turner relies on treat detentions based on specific, articulable clues that a particular type of crime might be afoot. For example, in *United States v. Sokolow*, [35] although the Supreme Court suggested that a series of innocent actions could amount to reasonable suspicion, the innocent actions in that case included paying for airline tickets with $20 bills, traveling under a different name, traveling to Miami from Hawaii for only 48 hours, appearing nervous, and not checking luggage.[36] The Court held that there was "a reasonable basis to suspect that respondent was transporting illegal drugs on these facts."[37] There is not a similar series of innocent conduct that combines to allow for reasonable suspicion of a crime here.

*United States v. Montoya de Hernandez*[38] is similarly inapt. In that case, customs inspectors noted that a suspect had made several recent trips between Bogota and the United States, spoke no English, had no relatives or friends in the country, and carried $5,000 cash and no credit cards.[39] She told inspectors that she was on a business trip, but had no appointments and no hotel reservations.[40] The Supreme Court found that the customs inspectors had "reasonable suspicion" that this particular traveler was smuggling drugs in her alimentary canal given her "implausible story" and the inspectors' previous

---

[34] *Monsivais*, 848 F.3d at 357 (internal quotation marks omitted) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

[35] 490 U.S. 1 (1989).

[36] *See id.* at 3, 9.

[37] *Id.* at 11.

[38] 473 U.S. 531 (1985).

[39] *Id.* at 533.

[40] *Id.*

experience with such smugglers. [41] Turner argues that while not as "stark" as those in *Montoya*, the facts alleged in the amended complaint establish reasonable suspicion. Yet Turner fails to point to a single fact to support such suspicion beyond Erin's "admitted[] interfer[ence]" with officers' attempts to communicate with John.

Accepting Erin's allegations as true, Turner lacked the "minimal level of objective justification"[42] to detain her. In short, Erin pled a plausible claim, even if her seizure is seen to be an investigatory detention.

c.

Finally, Erin has sufficiently pled unreasonable seizure even if we assume that she was detained as a witness. The Fourth Amendment arrives "whenever a police officer accosts an individual and restrains his freedom to walk away."[43] In recent years, the Court has held that the Fourth Amendment's reasonableness requirement constrains detention of potential witnesses to a crime—even when the intrusion goes no further than a brief checkpoint stop.[44] In these suspicionless stops, courts often apply *Brown v. Texas*, requiring weighing (1) "the gravity of the public concerns served by the seizure," (2) "the degree to which the seizure advances the public interest," and (3) "the severity of the interference with individual liberty."[45]

Erin argues that her detention was not a permissible witness detention, distinguishing the situation at hand from the type of brief investigatory checkpoint stop authorized by the Supreme Court in *Illinois v. Lidster*. Turner counters that Erin has not sufficiently pled facts "to show that [he] unreasonably seized her as a material witness," though elsewhere he

---

[41] *See id.* at 542.

[42] *Sokolow*, 490 U.S. at 7 (citation omitted).

[43] *Terry v. Ohio*, 392 U.S. 1, 16 (1968).

[44] *Lidster*, 540 U.S. 419, 426–27.

[45] *Brown*, 443 U.S. at 50–51.

distinguishes Erin from a mere "member of the public" and suggests that she was "potentially a suspect in a larger criminal enterprise."

The allegations make out a sufficient claim for an unreasonable detention even she was detained as a witness. The Supreme Court's application of *Brown* in *Lidster* is instructive, finding it reasonable to briefly detain drivers at a roadside checkpoint to question motorists about a hit-and-run in the area.[46] The Court found that the public concern was grave, since the police were investigating a "specific and known crime" that had "resulted in a human death";[47] that it was tailored to obtain information from drivers who might have seen the accident;[48] and that "[m]ost importantly, the stops interfered only minimally with liberty of the sort the Fourth Amendment seeks to protect."[49] In weighing this final factor, the Court noted that the stops required only "a very few minutes" in line and "only a few seconds" of police contact, and that they "provided little reason for anxiety and alarm."[50]

As in *Lidster*, this case brings to us a matter of significant public concern. And the second factor may weigh even more in favor of the police here—Erin was present at the crime scene, and in fact was the only person inside the house with her father. Through the eyes of a reasonable police officer, she was likely to possess helpful information, and it was reasonable to seek it, at least to confirm her identity and contact information. Accepting this, the facts alleged here went beyond the bounds of a reasonable detention.[51] This was not the type of "minimally intrusive" stop authorized by *Lidster*. Instead, a distressed

---

[46] *Lidster*, 540 U.S. at 428.

[47] *Id.* at 427.

[48] *Id.*

[49] *Id.*

[50] *Id.* at 428.

[51] "[W]hile the police have the right to request citizens to answer voluntarily questions concerning unsolved crimes[,] they have no right to compel them to answer." *Davis v. Mississippi*, 394 U.S. 721, 724 (1969).

young woman was handcuffed and left in the back of a police car for almost two hours. The stop provoked significant "anxiety and alarm," and lasted much longer than necessary to obtain information.

Confronting a similar question, two circuits agree that detaining police cannot detain a person for a significant period of time solely because she witnessed a police shooting.[52] In *Walker*, the Tenth Circuit concluded that "a ninety minute detention for this purpose [of obtaining names, addresses, and voluntary statements from witnesses] was unreasonable."[53] In *Maxwell*, the Ninth Circuit similarly found that law enforcement officers could not "detain, separate, and interrogate the [witnesses] for hours" solely as witnesses.[54] In so holding, both courts noted that "[e]ven in the *Terry* stop context—which involves a suspicion of criminal activity that is absent here—the Supreme Court has never endorsed a detention longer than 90 minutes."[55]

As our sister circuits noted, "[w]hat little authority exists on [the] question [of witness detention], suggests that police have less authority to detain those who have witnessed a crime for investigatory purposes than to detain criminal suspects."[56] We agree, and find that Erin has sufficiently pled an unreasonable seizure even under the *Brown v. Texas* balancing test. Erin has alleged a detention that would have been unreasonable if she were a suspect.

---

[52] *See Walker*, 451 F.3d at 1149–50 (holding that a ninety-minute detention of witnesses to a police shooting was not "justified by either the need for investigation of a crime or control of a crime scene"). *See also Maxwell*, 708 F.3d at 1083.

[53] *Id.* at 1149.

[54] *Maxwell*, 708 F.3d at 1084.

[55] *Id.* (citing *United States v. Place*, 462 U.S. 696, 709–10 (1983)); *accord Walker*, 451 F.3d at 1149 (citing *Place*, 462 U.S. at 709–10).

[56] 451 F.3d 1139, 1148 (10th Cir. 2006) (citing 3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.2(a), at 289 (4th ed. 2004)).

No. 16-10856

2.

We turn to whether Erin sufficiently pled excessive force. The district court thought that "[t]here [was] no allegation that Erin or her family had any contact with movants, physical or verbal." This was mistaken. Erin alleged the following physical contact between herself and Turner:

> Erin was handcuffed and thrown over the shoulder of Defendant Patrick Turner. Erin, terrified, did not fight, struggle or resist. Turner carried her into the backyard, hung her roughly over the back gate and then threw her onto her feet. Erin was then put her in the back of a police car in handcuffs.[57]

Given these factual allegations, we cannot agree with the district court that Erin "alleged little more than bare legal conclusions."

"To succeed on an excessive force claim, a plaintiff bears the burden of showing (1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable."[58] At this pleading stage, Erin has pled facts that would "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[59]

We have stated that "[a]lthough a showing of 'significant injury' is no longer required in the context of an excessive force claim, '[this Court] require[s] a plaintiff asserting an excessive force claim to have suffered at least some form of injury.' The injury must be more than a de minimis injury and must be evaluated in the context in which the force was deployed."[60] Although Erin alleges receiving bruises and scratches, she points to her psychological injuries, like sleeplessness, anxiety, and depression, as the sufficient injuries

---

[57] Erin also alleged "verbal" contact of questioning her custody and requesting to see her father, which was ignored.

[58] *Glenn*, 242 F.3d at 314 (internal quotation marks omitted).

[59] *Iqbal*, 556 U.S. at 678 (citation omitted).

[60] *Glenn*, 242 F.3d at 314 (citations and some internal quotation marks omitted).

to support her excessive force claim.[61] Erin is correct that psychological injuries can satisfy the injury requirement. This Court has explained:

> While certain injuries are so slight that they will never satisfy the injury element, *see, e.g.*, *Glenn*, 242 F.3d at 314 (holding that "handcuffing too tightly, without more, does not amount to excessive force"), psychological injuries may sustain a Fourth Amendment claim. *See Dunn v. Denk*, 79 F.3d 401, 402 (5th Cir. 1996) (en banc). The plaintiff's physical injuries in *Dunn* were only bruises, but she suffered substantial psychological injuries. We held that she alleged an injury sufficient to demonstrate the violation of a clearly established constitutional right.[62]

Turner does not fully engage Erin's assertion that her psychological injuries are sufficient here. Rather, he argues that handcuffing injuries are often insufficient and that "Erin did not allege these injuries 'resulted directly and only' from Officer Turner's actions, but that she was injured by 'the force used on her' and '*further* traumatized' by Officer Turner's actions."

The argument that Erin failed to sufficiently connect her injuries to Turner's actions is not without any footing, as Turner was not the only officer involved. But Erin's amended complaint alleges that "[w]hen Defendant Turner handcuffed [Erin] and threw her over his shoulder, she was shocked and terrified. She sustained bruises and scratches from the force used on her and was further traumatized by the actions of the officer." At the pleading stage, these factual allegations are sufficient to connect Erin's alleged injuries to Turner's use of force—and therefore to sufficiently plead causation. To

---

[61] Because Erin alleges these psychological injuries, we need not address whether a more than "de minimis" injury is still required for a Fourth Amendment excessive force claim in the wake of the Supreme Court's decision in *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (holding that a more than de minimis injury is not required to support an excessive force claim brought under the Eighth Amendment). *Cf. Bone v. Dunnaway*, 657 F. App'x 258, 262 n.3 (5th Cir. 2016).

[62] *Flores v. City of Palacios*, 381 F.3d 391, 397–98 (5th Cir. 2004) (some internal citations omitted).

conclude otherwise would mean that when a plaintiff suffers injuries at the hands of multiple officers for multiple reasons, she will be precluded from stating an excessive force claim against any single officer for failure to allege that her injuries "resulted directly and only from"[63] that particular officer's excessive use of force.

Finally, Erin has sufficiently pled that the force used by Turner was objectively unreasonable. "To 'gaug[e] the objective reasonableness of the force used by a law enforcement officer, we must balance the amount of force used against the need for force.' This balancing test 'requires careful attention to the facts and circumstances of each particular case.'"[64] Given Erin's allegations that she did not "fight, struggle or resist in any way" and "questioned why she was being taken into custody," Turner's alleged force was excessive.

Turner argues that Erin's own descriptions of herself after the shooting "justif[ied] Officer Turner's actions to secure Erin—a 'severely traumatized, non-compliant, unidentified, victim/suspect[.]"[65] Although Erin alleged that she was grief-stricken,[66] she also alleged—contrary to Turner's characterization—that she was compliant. Erin further alleged that Turner never asked her to stand up, move away from her father, or follow him to a different location.[67] The factual allegations show that Turner's use of force was excessive to the need and thus unreasonable. As a result, Erin has sufficiently pled a claim of excessive force.

---

[63] *Glenn*, 242 F.3d at 314.

[64] *Flores*, 381 F.3d at 399 (quoting *Ikerd v. Blair*, 101 F.3d 430, 434 (1996)).

[65] Turner states that the amended complaint describes Erin as "screaming in terror" and "in extreme distress as a result of the shooting of her father."

[66] According to the amended complaint, "Erin fell to the ground crying out in terror."

[67] Erin also alleges that "[t]here was no verbal request by anyone to Erin asking her to comply with any command or offering her any assistance before she was handcuffed and roughly removed from the scene against her will. There was no attempt to escort her from the scene and no request for her to remove herself before she was handcuffed and physically removed."

No. 16-10856

## B.

Although we hold that Erin has adequately pled her claims to survive a Rule 12(b)(6) challenge, her claims may still be barred on the basis of qualified immunity. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[68] "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense."[69] "The basic steps of our qualified-immunity inquiry are well-known: a plaintiff seeking to defeat qualified immunity must show: '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'"[70]

As we have already concluded that Erin sufficiently alleged violations of her right to be free from unreasonable seizure and excessive force, the remaining question for qualified immunity purposes is whether those rights were clearly established.

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"[71] "This inquiry 'does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'"[72] "The dispositive question is whether the violative nature of particular conduct is clearly established. This inquiry must be undertaken in

---

[68] *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *accord Glenn*, 242 F.3d at 312.

[69] *Club Retro*, 568 F.3d at 194.

[70] *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

[71] *Lincoln*, 855 F.3d at 301 (quoting *Reichle v. Howards*, 566 U.S. 658 (2012)).

[72] *Id.* (quoting *al-Kidd*, 563 U.S. at 741).

17

light of the specific context of the case, not as a broad general proposition."[73] "The central concept [of the test] is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."[74]

The district court found that Erin did not overcome Turner's qualified immunity defense, reasoning:

> Plaintiffs have not cited any authority to establish that every reasonable officer would have known that he could not detain a witness for a period of approximately two hours while an investigation was underway . . . Nor have they shown that Turner's actions in removing Erin from the area where medical personnel were treating her injured father was clearly unreasonable and that every officer would have known so.

1.

Erin avers that "[n]o reasonable officer could have believed that there was probable cause to detain, handcuff, or arrest Erin Lincoln." Erin's argument is twofold: first, that Turner had no probable cause to arrest her under Texas Penal Code § 38.15 for "interference with public duties" because her conduct fell within a clearly established "speech only" exception, and second, that it is clearly established that "a person cannot be taken into custody for [approximately two hours] simply for being a witness to an event, particularly where the individual was taken into custody forcefully . . . without ever being questioned."

Turner responds first by arguing that Erin has waived any argument that the "speech only" exception applies here. Then he attempts to distinguish

---

[73] *Mullenix*, 136 S. Ct. at 308 (internal quotation marks omitted).
[74] *Flores*, 381 F.3d at 399–400 (internal quotation marks omitted).

two cases that the plaintiff relied on, noting that neither case "involves a witness to a police shooting in which she was the only person with the suspect before the shooting, interfered with police attempts to communicate with the suspect, and was standing next to the suspect when he threatened police and was shot." Finally, Turner points to *Walker*,[75] where the Tenth Circuit found that there was no clearly established law prohibiting a ninety-minute detention of two witnesses to a police shooting, and asserts that we should reach the same conclusion here.

The district court held that plaintiffs did not cite clearly established law establishing that an officer cannot "detain a witness for a period of approximately two hours while an investigation was underway," although the parties have also consistently addressed Erin's detention as a potential suspect.[76] The reality may be somewhere in between. Turner seized Erin in the aftermath of a police shooting resulting from a SWAT team deployment. Even on Erin's account, the scene was tense, and the officers were acting with incomplete information. In these circumstances, Turner may have been entitled to detain Erin for some amount of time to determine her role in the situation. As we explained, Turner exceeded this authority when he handcuffed Erin and detained her in the back of a police car for two hours. In doing so, Turner violated Erin's constitutional rights.

Yet we are not persuaded that "*every* reasonable official would have understood that what he is doing violates that right."[77] At this stage, Erin has

---

[75] 451 F.3d at 1144.

[76] For example, Turner's brief claims that "Erin did not adequately plead facts showing that Officer Turner could not reasonably detain her as a suspect or a material witness after John was shot." Indeed, Turner's entire argument on Erin's failure to state a claim for unlawful detention focuses on whether he had the requisite reasonable suspicion for an investigatory stop, though he does make a passing reference to the fact that "if nothing else, she was a material witness."

[77] *Lincoln*, 855 F.3d at 301 (quoting *Reichle v. Howards*, 566 U.S. 658 (2012)).

19

No. 16-10856

the burden to demonstrate that the law was clearly established in this area on the date of the incident.[78] She relies primarily on *Dunaway v. New York*[79] and *Davis v. Mississippi*,[80] claiming that these cases demonstrate that Turner needed probable cause to detain Erin.

These cases are insufficient to clearly establish that Turner's conduct violated her Fourth Amendment rights. In *Dunaway*, police officers "pick[ed] up" a suspect, placed him in a police car, transported him to a police station, and detained him there for an interrogation.[81] The Supreme Court found that Dunaway's detention "was in important respects indistinguishable from a traditional arrest," and therefore required probable cause.[82] *Dunaway* shows that an officer cannot escape the Fourth Amendment's requirements merely by relabeling an arrest.[83] Yet *Dunaway* differs in important ways from the instant case. In *Dunaway*, the police went to one location, found the suspect, and then brought him to the police station to interrogate him. Here, Erin was detained at a crime scene in the immediate aftermath of a police shooting. She was detained for two hours in a police car that remained on-site during that time as the officers were sorting out what had just happened.[84] *Davis v. Mississippi* is similarly inapt. In that case, the Supreme Court held that probable cause was required to detain a suspect at a police station in order to obtain his

---

[78] *Club Retro*, 568 F.3d at 194. *See also Cass v. City of Abilene*, 814 F.3d 721, 732–33 (5th Cir. 2016).

[79] 442 U.S. 200 (1979).

[80] 394 U.S. 721 (1969).

[81] *Dunaway*, 442 U.S. at 203.

[82] *Id.* at 212.

[83] Specifically, the Court held "that detention for custodial interrogation—*regardless of its label*—intrudes so severely on interests protected by the Fourth Amendment as necessarily to trigger the traditional safeguards against illegal arrest." *Id.* at 216 (emphasis added).

[84] While Erin was subsequently taken into the police station for interrogation, *Lincoln*, 855 F.3d at 300, the complaint does not allege that Turner was involved in that detention nor that he knew it would take place. Thus, Erin's transportation to the police station is not relevant to the claims against Turner.

No. 16-10856

fingerprints where "no attempt was made . . . to employ procedures which might comply with the requirements of the Fourth Amendment."[85] The circumstances in *Davis* are readily distinguishable from the facts alleged here.

Qualified immunity does not operate at a high level of generality. Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."[86] *Davis* and *Dunaway* put officers on notice that probable cause may be required even where an interaction is not labeled an arrest, and *Lidster* warns officers that the Fourth Amendment applies even in a brief, information-gathering stop. However, none of those cases clearly established that a law enforcement officer could not detain a witness to a police shooting for these two hours while a SWAT team sorted out the scene, at the least when the witness was standing beside a person when the police shot him. Thus, we find that Erin has not shown that the contours of the right were so clearly established that "a reasonable official would understand that what he is doing violates that right."[87]

Because we find it was not clearly established that Turner needed probable cause to detain Erin, we need not wade into whether the "speech only" exception to Texas Penal Code § 38.15 was clearly established, nor whether Erin waived such an argument below.

Finally, we note that there may well be an emerging trend toward holding it unreasonable to detain a police shooting witness for an extended period of time, absent either reasonable suspicion or probable cause to believe that a crime has been committed.[88] While we may look to other circuits to find

---

[85] *Davis*, 394 U.S. at 728.

[86] *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

[87] *Id.* at 640.

[88] *See Walker,* 451 F.3d at 1151; *Maxwell*, 708 F.3d at 1084.

21

clearly established law, we must consider "the overall weight" of such authority.[89] A "trend" alone is just that. As of December 2013, only two circuits had weighed in on the "contours of the right." These cases alone do not provide sufficient authority to find that the law was clearly established. This conclusion is bolstered by the fact that the Tenth Circuit itself found no "clearly established weight of authority from other courts,"[90] and the Ninth Circuit relied on intra-circuit precedent to find clearly established law.[91]

2.

Turning to Erin's excessive force claim, Turner argues that "Erin cites no case law to show that no reasonable officer would have thought the means by which Officer Turner seized her was constitutional." Although Erin identifies the second step in the qualified immunity analysis, it is not clear that her contention was that the right to be free from excessive force was clearly established in this case. Instead, she suggests that her allegations lead to the conclusion that physically removing Erin in the manner that Turner did was unreasonable, and that her injuries sustain her claim. However, these are arguments that feed into the first step of the qualified immunity analysis—whether there was a constitutional violation. Accordingly, Erin waived argument as to the clearly established law prong and thus cannot overcome qualified immunity.[92] Regardless, we cannot on this record conclude that Erin

---

[89] *See Melear v. Spears*, 862 F.2d 1177, 1184 n.8 (5th Cir. 1989) ("Relying solely on Fifth Circuit and Supreme Court cases, for example, would be excessively formalistic, but they will loom large in our inquiries.").

[90] *Walker*, 451 F.3d at 1151.

[91] *Maxwell*, 708 F.3d at 1083–84.

[92] *See McIntosh v. Partridge*, 540 F.3d 315, 325 n.12 (5th Cir. 2008) ("McIntosh occasionally mentions an 'equal protection' claim in conjunction with his due process claim, but this claim is inadequately briefed and is hence waived."); *United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010) ("It is not enough to merely mention or allude to a legal theory."); FED. R. APP. P. 28(a)(8)(A) (argument on appeal must contain "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.").

No. 16-10856

could overcome qualified immunity on her excessive force claim given the lack of guiding precedent that shows the force used in this particular situation was "clearly unreasonable."[93]

## III.

In sum, although Erin stated a plausible claim for relief on both claims, we AFFIRM the district court's grant of qualified immunity to Turner and its dismissal of the claims.

---

[93] *Freeman*, 483 F.3d at 416.

23