HAYNES, Circuit Judge, concurring in part and dissenting in part: I concur -in the judgment of the court as to the City, Jones, Yoakum, and Long. The majority- opinion’s denying Logan qualified immunity under the undisputed facts here, however, effectively creates a • “stand down” rifle for law-enforcement. -I respectfully dissent from the judgment vacating and remanding as to Logan. This is an excessive force case under the Fourth Amendment. ' In such cases, “a court must'judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer.” Kingsley v. Hendrickson, — U.S. -, 135 S.Ct. 2466, 2474; 192 L.Ed.2d 416 (2015). The majority opinion primarily recites the events from the perspective' of Vann, the decedent. Katchens, the surviv-mg adult in Vann’s car, originally gave a statement that supported the police officers’ account of the events in question. After speaking with Plaintiffs investigator, he gave an affidavit more favorable to Plaintiff that contradicts several of his original statements. While there were a number of challenges to that affidavit in the district court, I will assume arguendo that we should consider it. Nonetheless, even doing so, several key undisputed facts remain. I add a few of those undisputed ■facts in order to properly portray what happened from the perspective of Logan, the officer. Early in the morning of May 28, 2014, one of Logan’s colleagues received , a report from a confidential informant. The Cl had arranged a meeting with a drug dealer in a convenience store parking lot to purchase one ounce of marijuana. Logan was asked to be part of a team of five officers who planned to bust the dealer. Neither Logan nor anyone on the team had any indication about how much drugs the dealer had on him, who would be with him, or whether he would be armed. When they arrived at the meet-up point, the Cl approached from the behind the store, moving to the front of it, while officers staked out the parking lot in their vehicles. Waiting in a car were two men (Vann, the driver, and Katchens, the passenger), one of whom waved to the Cl to come to the ear. At that point, Logan and others stepped in to arrest the dealers. They used their vehicles to comer in the dealers’ vehicle, leaving it only one escape route. The precise details and sequence of events are disputed from there. Because we are reviewing a motion for summary judgment, I accept the evidence in the light most favorable to Plaintiff. At least one of the officers wore a vest that said “POLICE” on it. Plaintiff contends (as the majority opinion puts it) that Logan “purposefully placed himself between Vann’s car and [Vann’s] escape route.” Maj. Op. at 135. Once there, Logan yelled, “Freeze!” loudly enough that it could be heard in Vann’s car. In response, Vann revved the engine.[1] Plaintiffs Amended Complaint, which binds the plaintiff, acknowledges that “Vann attempted to flee” by driving away and that Logan was then “struck by the vehicle.... ” At some moment during this escape attempt, when Logan was in front of the vehicle that ultimately struck him, Logan fired his weapon. This expanded summary shows Logan used reasonable force. Analyzing excessive force claims “requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.” See Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Those factors all favor Logan, taking as true the facts alleged by Plaintiff but viewing them from the perspective of a reasonable officer in Logan’s shoes. Illegally dealing controlled substances is a serious crime. See 21 U.S.C. §§ 841(a), 846 (criminalizing distribution and conspiracy to distribute marijuana); Miss. Ann. Code § 41-29-139(b)(2)(A) (criminalizing possession with intent to distribute marijuana); see also United States v. Christie, 825 F.3d 1048, 1058-59 n.4 (9th Cir. 2016) (citing a memorandum from the Department of Justice that “affirms DOJ’s ‘commitment to enforcing the CSA consistent with’ Congress’s judgment ‘that marijuana is a dangerous drug and that the illegal distribution and sale of marijuana is a serious crime that provides a significant source of revenue to large-scale criminal enterprises, gangs, and cartels.’” (internal brackets omitted)); United States v. Nunez, 386 Fed.Appx. 757, 759 (10th Cir. 2010) (“Nunez’s violation offense—possession with intent to distribute marijuana—is a serious crime which, if prosecuted in federal court, would carry a statutory maximum penalty of five years’ imprisonment for quantities less than 50 kilograms.”). Vann attempted to evade arrest by .driving his vehicle away. Even in Plaintiffs account, Vann posed an immediate threat to Logan’s and the other officers’ safety. Vann and Logan were surrounded by vehicles and police officers, at least one of whom was clearly identified as ]aw enforcement. (Even if Vann may not have seen that identification, Logan could reasonably conclude that he did.) In these tight quarters, Logan yelled, “Freeze!” only to be met by Vann revving his engine. Ultimately, Logan faced a vehicle that indisputably went on to hit him. Thus, even accepting that the circumstances were as Plaintiff presented them, Logan’s use of his firearm to protect himself and others was reasonable force. The majority opinion concludes that Logan is not entitled to summary judgment because of a dispute over facts. I agree with the well-worn statement that if there are material disputes of fact, then summary judgment is improper. However, the key word here is “material.” Not all factual disputes qualify. This one does not. The majority opinion intently focuses on a fact that our precedent says is irrelevant—why Logan was in front of Vann’s vehicle in the first place. The cases cited from the Supreme Court and our court by the majority opinion and the parties do not hold that an officer’s actions prior to the use of deadly force are relevant to the inquiry of whether the use of deadly force was reasonable. Quite the opposite: “The excessive force inquiry is confined to whether the [officer] was in danger at the moment of the threat that resulted in the [officer] shooting [an individual].” Bazan ex rel. Bazan v. Hidalgo County, 246 F.3d 481, 493 (5th Cir. 2001); see also Harris v. Serpas, 745 F.3d 767, 772-73 (5th Cir. 2014) (rejecting the argument that officers’ decision to “breach [an individual’s] bedroom door yelling commands and firing taser darts at him” was relevant to qualified immunity' analysis in a deadly force suit even though the officers’ actions caused the individual to become “agitated and threatening”); Rockwell v. Brown, 664 F.3d 985, 993 (5th Cir. 2011) (“At the time of the shooting, [the suspect] was engaged in an armed struggle with the officers, and therefore each of the officers had a reasonable belief that [the suspect] posed an imminent risk of serious harm to the officers. We need not look at' any other moment in time.”); Fraire v. City of Arlington, 957 F.2d 1268, 1276 (5th Cir. 1992) (“[R]egardless of what had transpired up until the shooting itself, [the suspect’s], movements gave the officer reason to believe, at that moment, that there was a threat of physical harm.” (emphasis added)). Indeed, the majority opinion runs afoul of the Supreme Court’s reasoning rejecting the Ninth Circuit’s “provocation doctrine,” a theory that an earlier Fourth Amendment violation can transform an otherwise reasonable use of force into a constitutional violation. See County of L. A. v. Mendez, — U.S.-, 137 S.Ct. 1539, 1546-48, 198 L.Ed.2d 52 (2017). The Court reaffirmed that an officer’s actions áre judged at the time the force is used, based on then-existing circumstances. Id. at 1546-47 (“Excessive force claims ... are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred.” (ellipsis in original) (quoting Saucier v. Katz, 533 U.S. 194, 207, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001))). The Court rejected the provocation doctrine even though the Ninth Circuit limited the doctrine to reckless or intentional behavior by officers. Id. at 1548. The majority opinion also runs afoul of many qualified immunity cases where one could say that, had the officer acted differently, he or she might not have been in “harm’s way.” See, e.g., Elizondo v. Green, 671 F.3d 506, 511 (5th Cir. 2012) (DeMoss, J., concurring) (describing two then-recent cases where the officers from the same department took actions that accelerated rather than decelerated the crisis leading to fatal shootings and yet the officers received qualified immunity). Whether Logan “purposefully placed himself’ in harm’s way is thus irrelevant to our decision. The majority opinion tries to collapse the inquiry by “viewing these steps [i.e., the decision to get in front of the vehicle and the decision to shoot] together as the relevant conduct.” Maj. Op. at 137.[2] While the totality of the circumstances informs the officer’s knowledge relevant to the potential arrestee, whether deadly force is excessive depends on the moment at which it is used. The majority opinion suggests that the legal question is “whether [Logan was permitted] to shoot a misdemeanor suspect[3] quickly maneuvering his car to escape surrounding cars and driving in the direction of an area with no officers.” Maj. Op. at 137. This framing puts Logan out of the car’s path by resetting the clock to before Logan allegedly tried to close off the vehicle’s escape. In other words, the majority opinion wants to ask whether Logan’s decision to get in front of the car was reasonable, not whether his use of force was. See Bazcm, 246 F.3d at 493. A recent unpublished decision from our court demonstrates well the proper analysis. See Davis v. Romer, 600 Fed.Appx. 926 (5th Cir. 2015) (per curiam). In that case, the officer reacted to a driver’s failure to obey a command to exit a vehicle. Id. at 927-28. Rather than let the truck go, the officer decided to jump onto its running board (a metal step attached to the truck) as the driver pulled away. Id. at 928. When the driver refused to stop the truck, the officer “pulled his gun from the holster and fatally shot” the driver. Id. The panel rejected the argument that the officer “caused the danger by jumping on the running board of the vehicle. In other words, [the driver’s argument was] that instead of jumping on the vehicle [the officer] should -have moved: away from the fleeing vehicle.” Id. at 930. Relying on some of the same authorities I have cited above, the panel concluded that the reasonableness of force had to be judged based ón when the officer was on the moving vehicle, not based on whether he should have been there, in the first place. See id. at 929-31. We should follow that same analysis here. The majority opinion effectively adopts a “stand down” rule for law enforcement. Sadly, officers are required to put themselves in harm’s way in a lot of situations where most people would run away. Society lauds honest police officers precisely because they put themselves in harm’s way by engaging dangerous people to keep us safe. It is hard to imagine that the majority opinion is suggesting officers are required to stand down or face a lawsuit. But to' require Logan to stand trial for his alleged decision to step in front of Vann’s vehicle does just that. Even assuming, arguendo, that Logan used excessive force, the question then becomes, was there law that put Logan on notice that shooting in this situation violated the constitution? The majority opinion says this law should not be viewed at a “high level of generality” but turns that against Logan, essentially requiring him to' find a case in his favor. The law is just the opposite: it is Plaintiff who must find a cáse in his favor that does not define the law at a “high level of generality.” Cass v. City of Abilene, 814 F.3d 721, 732-33 (5th Cir. 2016) (per curiam). In the district court, he cited nary a pre-existing or prec-edential case. That .alone dooms his case here. See id. at 733 (granting qualified immunity even though the defendant did not cite any cases in his favor to the district court because plaintiff bears the burden of showing specific law on point). Even on appeal, he fails to cite a case on point from this court or the Supreme Court, that helps his case,, instead relying on an out-of-circuit case. See Morgan v. Swanson, 659 F.3d 359, 372 (5th Cir. 2011) (en banc) (“Where no controlling authority specifically prohibits a defendant’s conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established.” (citing Wilson v. Layne, 526 U.S. 603, 617-18, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999))). Supreme Court precedent provides no support to Plaintiff and, indeed, counsels the opposite result. All of the recent cases from the Supreme Court involving suspects in moving vehicles have found qualified immunity, even despite disputes over facts: Mullenix v. Luna, — U.S. -, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015); Plumhoff v. Rickard, — U.S. -, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014); Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); Brosseau v. Haugen, 543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004). Far from clearly establishing (before or after this incident in 2014) a constitutional norm that Logan violated, the Court ruled in favor of the officers in these cases. The majority opinion is similarly unhelpful. It cites the following cases: Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); Tolan v. Cotton, — U.S. -, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014); Lytle v. Bexar Cty., 560 F.3d 404 (5th Cir. 2009).[4] None of these cases involved a moving vehicle except Lytle,[5] a case which the Supreme Court called into question in Mullenix and cannot be squared with the more recent decisions in Mullenix and Plumhojf. See Mullenix, 136 S.Ct. at 310 (“The Court has thus never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity.”); Plumhoff, 134 S.Ct. at 2022 (“Under the circumstances at the moment when the shots were fired, all that a reasonable police officer could have concluded was that [the suspect] was intent on resuming his flight and that, if he was allowed to do so, he would once again pose a deadly threat for others on the road.”). However, even assuming Lytle survives these cases, it does not support the majority opinion’s decision as to Logan. As we acknowledged then, if the vehicle had presented a threat of harm, the officer would “likely [have been] entitled to qualified immunity. This is due to the threat of immediate and severe physical harm that the reversing [vehicle] likely posed to [the officer] himself.” Lytle, 560 F.3d at 412. Lytle, therefore, does not help us here because the fleeing person there was not in a situation where he would have been an immediate threat to anyone. See Sanchez v. Edwards, 433 Fed.Appx. 272, 276 (5th Cir. 2011) (per curiam) (“We based our decision [in Lytle] on evidence suggesting that the officer was three-to-four houses away from the vehicle when he fired his weapon and that the vehicle was moving away from, rather than towards, him at the time.”); see also Hathaway v. Bazany, 507 F.3d 312, 320 (5th Cir. 2007) (“The reasonableness of an officer’s use of deadly force is therefore determined by the existence of a credible, serious threat .to the physical safety of the officer or. to those in the vicinity.”). The majority opinion tries to nestle this case into a single line from Mullenix categorizing certain cases as “involving ‘suspects who may have done little more than flee at relatively low speeds.’ ” Maj. Op. at 138 (quoting Mullenix, 136 S.Ct. at 312). That line from Mullenix addressed our opinion that was the subject of the certio-rari petition and had denied qualified immunity based on what the Court found to be “factually distinct” cases. See Mullenix, 136 S.Ct. at 312 (“These cases shed little light on whether the far greater danger of a speeding fugitive threatening to kill police officers waiting in his path could warrant deadly force.”). Mullenix did not suggest those cases were correct. Nor ■ do those cases distinguished by Mullenix create clearly established law making Logan’s actions in this case unconstitutional; not one of them involves an officer who was indisputably in the path of a vehicle at the time he fired his weapon. In sum, even assuming the facts in a light most favorable to Plaintiff, I conclude that, from the perspective of what Logan knew and could have reasonably believed, he used reasonable force. At the very least, Logan is entitled to qualified immunity because no clearly established law notified Him that his actions violated the Constitution. Accordingly, I respectfully dissent from the portion of the judgment denying qualified immunity and remanding the case as to him. . Katchens' affidavit makes these facts abundantly clear: 14. The man in the red shirt [i.e., Logan] was léaníng at about the center of the hood and I [i.e., Katchens] think he may have had one hand on the hood and in his other hand he had the gun pointed at us. The gun was about three feet away from us. 15. I did hear the man in the fed shirt yell FREEZE! 16. I never heard anyone yell POLICE! Just FREEZE! 17. I put my hands up in the air. [Vann] looked scared and I was scared too. 18. This next part happened very fast, [sic] [Vann] tapped the gas and the engine revved but the car did not move and I told [Vann] "stop fool" meaning don’t rev the engine. Later.in the same affidavit Katchens acknowledged that one of the officers at the scéne "had on a vest that said POLICE on it,” even if Katchens did not see him originally. The district court ignored Katchens’ affidavit because it directly contradicted Katchens’ earlier statements that the officers approached with sirens on and that Katchens told Vann in the moment that the Cl "done called the police on you." See Vann v. City of Southaven, 199 F.Supp.3d 1129, 1145 (N.D. Miss. 2016). In contrast, I am assuming ar-guendo that we must consider it over his earlier statements. The majority opinion, however, considers Katchens’ affidavit only from Katchens’ perspective. Maj. Op. at 135 n.1. The proper analysis is to assume the facts in Katchens' affidavit are true and then determine from Logan's perspective whether his actions were reasonable. Whether Katchens or Vann subjectively believed tire police were ordering them to stop is irrelevant. . The majority opinion also seemingly tries to transmute this legal issue into a factual one by claiming that the evidence can be interpreted so that Logan's alleged running in front of the car and shooting were "not distinct acts.” See Maj. Op. at Í37. But as Katch-ens’ affidavit confirms, Logan at the very least yelled, "Freeze!” and heard a revving engine before he fired. (On the officers' versions of the events, Vann acted far more aggressively and Logan never moved in front of the vehicle.) No evidence even implies that Logan's alleged movement in front of the vehicle and his shot occurred at the same moment. The majority opinion's citations do not support interpreting these alleged actions as a single moment. It first cites a statement from Plaintiff’s brief in the district court that "Logan ran to the opening and shot Vann to prevent him from fleeing.” Maj. Op. at 137— 38 (emphasis omitted). Regardless of how that statement is interpreted, it was made in a brief without citation to any record evidence supporting it, which means we must ignore it, See Garcia v. LumaCorp, Inc., 429 F.3d 549, 555 (5th Cir. 2005) ("Needless to say, unsubstantiated assertions are not- competent summary judgment evidence.” (internal quotation marks omitted) (quoting Abbott v. Equity Group, Inc., 2 F.3d 613, 619 (5th Cir. 1993))). The majority opinion also.cites a statement from Logan’s deposition that "it all happened at one time.” The majority opinion depicts this statement as applying to "the moment when [Logan] ran, turned to face Vann, and shot.” Maj. Op. at 137. The biggest hole in that citation is that Logan maintained that he was in front of the vehicle because Vann positioned the vehicle toward him; any running Logan did was only to get out of the way of the vehicle, not into its path. Thus, his deposition testimony could not support the notion that his (1) decision to run in front of the car and (2) decision to fire happened at the same time, because he never said he decided to run in front of the car. But even assuming Logan had admitted that he decided to run in front of the car, his statement does not support the majority opinion’s reasoning. The "it” in "it all happened at one time” was the car making contact with Logan and Logan firing his weapon—not his decision to move in front of the car and his decision to fire. The excerpt of the deposition included in the majority opinion makes this clear. Logan indicated that he began running; the attorney deposing him then asked, "What happens next?” indicating that Logan’s next answer followed the beginning of his run. Then, as Logan described the car coming down on him, he reported that "my left hand hit the hood of car at the same time” and then stopped mid-sentence to re-phrase his sentence, "I mean, it all happened at one time; and I fired one round into the windshield,” The majority opinion grasps at other variations between Logan’s description of the events and Katchens’ affidavit, but no matter whose story is believed, Logan faced a vehicle acting aggressively, which ultimately hit him, when he fired. . „ . . Again, while the amount to be sold pursuant to the staged buy was one ounce, there is no indication that the officers reasonably be- , lieved Vann’s drug dealing to be limited to this one ounce. Furthermore, possession with intent to sell even one ounce of marijuana is punishable as a felony under state law, including up to three years of imprisonment. See Miss. Code. Ann. § 41-29-139(b)(2)(A). . The majority opinion also discusses the Sixth Circuit case of Godawa v. Byrd, 798 F.3d 457 (6th Cir. 2015)/ cited by the plaintiff, but decided after the events in question. Even assuming arguendo that Godawa relied upon established Sixth Circuit precedent, we have made clear that out-of-circuit precedent must establish a "robust” consensus to be considered "clearly established.” Morgan, 659 F.3d at 371-72 (requiring us to be able to point to "robust consensus of persuasive authority" to establish the "contours” of a right). One circuit is hardly that. Lincoln v. Turner, 874 F.3d 833, 850 (5th Cir. 2017) (concluding that the opinions of two other circuits, while perhaps indicating an emerging trend, are insufficient to establish "clearly established law”). . Tennessee v. Garner, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), involved a felon fleeing on foot, and in Tolan v. Cotton, — U.S. -, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014), the parties in question had exited the vehicle and were standing on the driveway at the time of the disputed incident.