**REVISED FEBRUARY 3, 2015**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 2, 2015

Lyle W. Cayce
Clerk

No. 13-11242

CORDELL DAVIS, Individually; ANTOINETTE TURNER, as next friend for J.T.T., a minor,

        Plaintiffs - Appellants

v.

J. ROMER, in his individual capacity,

        Defendant - Appellee

-------------------------------------------------------------------------------------------------------------

LESLEE MARIE MARTIN, as next friend for C.T.T., Jr., a minor; ALICIA DE'SHON WHITE, as next friend for T.L.T., a minor; PATRICIA THOMAS, as next friend for D.M.G., a minor,

        Plaintiffs - Appellants

v.

J. ROMER, Individually and in His Official Capacity,

        Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC Nos. 4:13-CV-198 & 4:13-CV-234

No. 13-11242

Before STEWART, Chief Judge, BENAVIDES, and OWEN, Circuit Judges.

PER CURIAM:[*]

Fort Worth Police Officer J. Romer ("Romer") was attempting to arrest Charal Thomas ("Thomas"), who was sitting in the driver's seat of his vehicle. Although there was a warrant for his arrest, Thomas refused to exit his vehicle and submit to a lawful arrest. Romer reached inside the driver's window, and Thomas suddenly began driving away. Romer then jumped on the vehicle's running board and ordered Thomas to stop the vehicle, but Thomas ignored the order and continued to drive toward the entrance to the freeway. After Thomas refused to stop the vehicle, Romer, who was still standing on the running board of the fleeing vehicle, fatally shot Thomas. Thomas's four children, three of whom were passengers in Thomas's vehicle, and an unrelated passenger brought this suit against Romer, alleging, among other things, excessive use of force in violation of the Fourth Amendment. The district court granted summary judgment after determining that Romer was entitled to qualified immunity. Because we conclude that there was no constitutional violation in Romer's use of deadly force, we affirm the district court's judgment.

I.     FACTUAL AND PROCEDURAL HISTORY

On February 28, 2011, undercover officers observed Thomas leaving a house that was believed to be involved with drug trafficking. Those officers then observed Thomas committing traffic infractions while driving and called uniformed patrol officers to make a traffic stop. Thomas was driving his Ford Expedition in Fort Worth, Texas. His front seat passenger was Cordell Davis

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-11242

("Davis"), and three of Thomas's minor children were seated in the second row. Officer Romer and Officer C.C. Drew ("Drew") stopped Thomas based on the alleged misdemeanor traffic violations. While Thomas waited in the vehicle, the officers ran his driver's license through the computer and discovered outstanding misdemeanor traffic warrants.

Standing by the driver's door, Drew informed Thomas that they were going to arrest him and asked him to exit his vehicle. Thomas refused, and Drew attempted to open the driver's side door. Romer reached inside the vehicle through the driver's side window in an attempt to unlock the door. With Romer's arm inside the vehicle, Thomas starting driving to the left toward the exit of the parking lot and then onto the service road alongside the freeway. When the vehicle starting moving, Romer jumped on the running board. Although Romer and Davis were both shouting for Thomas to stop the vehicle, he continued driving. As the vehicle was traveling on the highway's service road, Romer, who was standing on the vehicle's running board, pulled his gun from the holster and fatally shot Thomas. Upon hearing the gunshots, Davis jumped out of the moving vehicle from the passenger side and was injured as he fell to the ground. The vehicle then came to a stop in the driveway of a residence along the service road.

In 2013, Davis and Thomas's four minor children (each acting through a next friend) brought suit against Romer, individually and in his official capacity as a police officer, and the City of Fort Worth. The plaintiffs alleged excessive use of force in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983 and various state law claims.

Romer moved for summary judgment based on qualified immunity. The district court agreed and entered summary judgment in favor Romer in his individual capacity. Additionally, the court *sua sponte* dismissed without prejudice all claims against Romer in his official capacity, stating that those

3

claims are considered by law to be claims against his employer, the City of Fort Worth. The court then determined that there was no just reason for delay and entered final judgment as to Romer. *See* FED. R. CIV. P. 54(b). The plaintiffs now appeal that judgment. The district court subsequently granted the City of Fort Worth's motion for summary judgment and that case is pending by separate appeal before this Court. *Davis et al. v. City of Fort Worth*, No. 14-10759.

II. ANALYSIS

A. Standard of Review

This Court reviews a grant of summary judgment de novo, applying the same standards as the district court. *Am. Home Assurance Co. v. United Space Alliance, LLC,* 378 F.3d 482, 486 (5th Cir. 2004). "A summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Id.*; *see also* FED. R. CIV. P. 56(a).

B. Qualified Immunity from Excessive Force Claim

Appellants contend that the district court erred in granting Romer summary judgment based on his defense of qualified immunity. "To determine whether a defendant is entitled to qualified immunity, this Court engages in a two-pronged analysis, inquiring (1) whether the plaintiff has alleged a violation of a constitutional right and, if so, (2) whether the defendant's behavior was objectively reasonable under clearly established law at the time the conduct occurred." *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007) (citing *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006)). "If the plaintiff fails to state a constitutional claim or if the defendant's conduct was objectively reasonable under clearly established law, then the

government official is entitled to qualified immunity." *Id.* (citing *Easter,* 467 F.3d at 462). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, __ U.S. __, 131 S. Ct. 2074, 2085 (2011) (internal quotation marks and citation omitted). "Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense is not available." *Kovacic v. Villarreal,* 628 F.3d 209, 211 *(*5th Cir. 2010).

Appellants contend that Officer Romer violated the Fourth Amendment by using excessive force. The Fourth Amendment guarantees the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. Here, it is undisputed that Romer's use of deadly force against Thomas constituted a seizure. Accordingly, Appellants "need only show that the use of deadly force was excessive, and that the excessiveness of the force was unreasonable." *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014) (citations and internal quotation marks omitted). However, an officer's use of deadly force is not unreasonable when the officer has reason to believe that the "suspect poses a threat of serious harm to the officer or others." *Id.* (citations and internal quotation marks omitted). We must determine the reasonableness of the use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Plumhoff v. Rickard,* __ U.S. __, 134 S. Ct. 2012, 2020 (2014) (citation and internal quotation marks omitted).

Appellants' principal argument is that Romer's conduct caused the dangerous encounter. Specifically, Appellants contend that "Romer's life was in danger because of his own intervening actions of attempting not once but twice, to grab a hold of a moving vehicle when Romer had a choice not to do so." Blue brief at 14. Appellants contend that the district court erred in interpreting this Court's precedent to limit its analysis to the circumstances

No. 13-11242

existing at the moment Romer shot Thomas.  Recently, this Court has rejected the same argument.  In *Thompson v. Mercer*, an officer ended a two-hour high-speed chase by fatally shooting the suspect with an assault rifle.  762 F.3d at 436.  The Thompsons argued that the officers created the danger in their attempts to intercept the fleeing vehicle driven by the suspect.  *Id.* at 439.  This Court held that such an argument was "wholly without merit," explaining that it had "consistently rejected similar reasoning."  *Id.* at 439–40.  This Court explained that the "question is not whether the force would have been avoided if law enforcement had followed some other police procedures."  *Id.* at 440 (citations and internal quotation marks omitted).  Instead, the Court explained that "regardless of what had transpired up until the shooting itself, the question is whether the officer [had] reason to believe, at that moment, that there was a threat of physical harm."  *Id.* (citation and internal quotation marks omitted) (alteration in original).  This Court concluded that it was the fleeing driver and not the officer "who intentionally placed himself and the public in danger by unlawfully engaging in the reckless, high-speed flight that ultimately produced the choice that [the officer] had to make."  *Id.* (citation and internal quotation marks omitted) (alteration added).  Accordingly, this Court held that the officer's shooting of the suspect did not violate the Fourth Amendment.  *Id.*

In *Rockwell v. Brown*, police officers were called because a mentally ill individual had threatened suicide and barricaded himself in his room.  664 F.3d 985, 989 (5th Cir. 2011).  The individual refused to leave the room, and the officers decided that because he was a threat to himself and his family, they were going to arrest him.  *Id.*  When the officers breached the bedroom door, the individual was wielding two eight-inch knives and rushed out of his room toward the officers.  The officers fatally shot him.  Relying on precedent from other circuits, the decedent's family asked this Court to consider the

No. 13-11242

circumstances surrounding the breach of the bedroom door in determining the reasonableness of the officers' use of deadly force. *Id.* at 992. This Court found the argument unavailing, explaining that at the time the officers used deadly force, the decedent was armed, and the officers had a reasonable belief that he posed an imminent risk of serious harm. *Id.* at 993. Indeed, this Court stated that "[w]e need not look at any other moment in time." *Id.*; *see also Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014) (explaining that "any of the officers' actions leading up to the shooting are not relevant for the purposes of an excessive force inquiry in this Circuit").

Additionally, in *Fraire v. City of Arlington*, a police officer fatally shot the driver of a truck that was headed toward the officer. 957 F.2d 1268 (5th Cir. 1992). The plaintiffs alleged that the officer may not have followed established police procedure in identifying himself while in plain clothes. *Id.* at 1275. The gist of their argument was that the officer's failure to follow procedure "manufactured the circumstances that gave rise to the fatal shooting." *Id.* This Court explained that "regardless of what had transpired up until the shooting itself, [the suspect's] movements gave the officer reason to believe, at that moment, that there was a threat of physical harm." *Id.* at 1276. Thus, the force was not excessive and the officer was entitled to qualified immunity.

Appellants recognize the above precedent and seek to distinguish it, stating that Davis and the minor children testified that Romer's arm was not trapped in the window as Romer claims. Brief at 13. Appellants asserted at oral argument that Romer should have made the "better decision . . . to let [Thomas] go." Appellants argue that Romer caused the danger by jumping on the running board of the vehicle. In other words, their argument is that instead of jumping on the vehicle Romer should have moved away from the fleeing vehicle. Appellants' argument that the "officer[ ] could have moved

No. 13-11242

away from the car is, unfortunately, a suggestion more reflective of the 'peace of a judge's chambers' than of a dangerous and threatening situation on the street." *Ramirez v. Knoulton*, 542 F.3d 124, 130 (5th Cir. 2008) (quoting *Elliott v. Leavitt*, 99 F.3d 640, 643 (4th Cir. 1996)). Viewing the evidence in the light most favorable to Appellants, there is testimony that Romer removed his arm from the window after Thomas began driving toward the service road. Nonetheless, this does not constitute a genuine issue of material fact because Appellants' brief concedes that Romer's arm was inside the vehicle at the time Thomas began driving away. Brief at 17. Moreover, the evidence, including Davis's testimony, demonstrates that Thomas's driving away with Romer's arm inside the vehicle and Romer subsequently jumping on the vehicle's running board occurred very rapidly. Under such chaotic, dangerous circumstances, Appellants have not shown that Romer's conduct was objectively unreasonable. As previously discussed, the definitive question is whether Romer had a reasonable belief that Thomas posed a risk of serious harm at the time Romer used deadly force. Appellants have conceded that Romer was on the running board of the fleeing vehicle when he fired the fatal shots. We therefore conclude that at the time of the shooting, Romer had reason to believe that there was a serious threat of physical harm to him.[1]

Nonetheless, Appellants argue that Romer did not kill Thomas in an act of self-preservation. Instead, Appellants claim Romer's "actions were motivated by a violent and sadistic rage to kill Charal Thomas when he left the scene of a traffic stop." *Id.* at 10. However, the "reasonableness inquiry is objective:    the question is whether the officers' actions are objectively

---

[1] Appellants point out that Romer knew that Thomas was an amputee with only one leg and thus could not elude the officers once the vehicle was stopped. Brief at 16. However, that does not change the fact that Romer was at serious risk of harm when he used deadly force while traveling down the service road on the running board.

8

reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Rockwell*, 664 F.3d at 991 (citation and internal quotation marks omitted). Thus, Romer's subjective intent is irrelevant to the reasonableness determination.

Appellants further attempt to distinguish the above-discussed precedent, stating that unlike those cases, in the instant case, Thomas was unarmed. The Supreme Court has held that it is constitutionally unreasonable to use deadly force on an unarmed suspect by shooting him while he was fleeing on foot. *Tennessee v. Garner*, 471 U.S. 1 (1985). This is because the officer "could not reasonably have believed" that the suspect "posed any threat," and the officer "never attempted to justify his actions on any basis other than the need to prevent an escape," *Id.* at 21. That case is inapposite. Here, the testimony and the diagram of the scene demonstrate that Romer was standing by the driver's door when Thomas suddenly drove to the left with Romer's arm inside the vehicle. Moreover, it is undisputed that Romer was standing on the running board of the vehicle as it was being driven on the service road and headed toward the freeway. Clearly, Thomas's actions put the officer in harm's way, and there was a very real danger that Romer would sustain serious injury or death. Thus, unlike in *Garner*, Thomas's actions were posing a threat to Romer at the time of the shooting.

Additionally, Appellants contend that the force was unjustified because the warrants for Thomas's arrest were for outstanding misdemeanor traffic violations and not for the commission of any felony. Brief at 16. This Court has rejected just such an argument, explaining that the important question is whether the suspect is "dangerous or benign" and "not whether the suspect is suspected of committing a felony or a misdemeanor." *Fraire*, 957 F.2d at 1276 n.29. Appellants also point to the fact that Romer fired 12 rounds as opposed to a single shot in self-defense. Blue brief at 13-14 (citing *Fraire,* 957 F.2d

1275).  The Supreme Court has rejected the argument that an officer's firing of 15 rounds constituted excessive force because "if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended."  *Plumhoff*, 134 S. Ct. at 2022.

Accordingly, because Romer's use of force was objectively reasonable, Appellants have not shown a Fourth Amendment violation.  Thus, Appellants cannot show that Romer's use of deadly force was objectively unreasonable under clearly established law at the time the incident occurred.  *Cf. Brosseau v. Haugen*, 543 U.S. 194 (2004) (per curiam) (holding that a police officer did not violate clearly established law when she fired at a fleeing vehicle to prevent possible harm to others in the immediate area).  The district court properly granted summary judgment as to the Fourth Amendment claim based on qualified immunity.

### C. Qualified Immunity from State Law Claims

The district court ruled that Romer was entitled to qualified immunity under Texas state law with respect to the state law claims.  Romer asserts that Appellants have abandoned their state law claims by failing to address them in their opening brief.[2]  Appellants do not address the district court's disposition of their state law claims in their brief.  Thus, Appellants have abandoned any state law claims.  *Yohey v. Collins,* 985 F.2d 222 (5th Cir. 1993).

---

[2] Romer also asserts that Appellants' claims against him in his official capacity have been abandoned because Appellants did not brief them.  Red brief at 27.  On October 15, 2013, the district court *sua sponte* dismissed without prejudice the claims against Romer in his official capacity and stated that those claims are considered by law to be claims against his employer, City of Fort Worth.  As previously mentioned, the separate appeal involving the City of Fort Worth is separately pending before this Court.  *Davis et al. v. City of Fort Worth*, No. 14-10759.

No. 13-11242

D.  Conclusion

For the above reasons, the judgment of the district court is AFFIRMED.