# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

November 22, 2017

Lyle W. Cayce
Clerk

—————

No. 16-60561

—————

ROGERS VANN, As Personal Representative and on Behalf of the Wrongful Death Beneficiaries of Jeremy W. Vann,

Plaintiff – Appellant,

v.

CITY OF SOUTHAVEN, MISSISSIPPI; LIEUTENANT JORDAN JONES, Individually and in His Official Capacity as a Police Officer; SERGEANT BRETT YOAKUM, Individually and in His Official Capacity as a Police Officer; POLICE CHIEF TOM LONG, Individually and in His Official Capacity as a Police Officer and Chief of Police; SERGEANT JEFF LOGAN, Individually and in His Official Capacity as a Police Officer,

Defendants – Appellees.

—————————————

Appeal from the United States District Court
for the Northern District of Mississippi

—————————————

Before SMITH, ELROD, and HAYNES, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

This lawsuit arises from the death of Jeremy W. Vann, who was shot and killed by police in a retail parking lot in Southaven, Mississippi during a small-scale drug sting operation. Because there are genuine issues of material fact that preclude the qualified-immunity determination as to one of the defendants, we AFFIRM in part, VACATE in part, and REMAND to the district court.

No. 16-60561

I.

The City of Southaven used prior arrestees as confidential informants to buy small amounts of drugs from non-residents who agreed to sell them. When the drug sale was intercepted by police, the police would seize cash and property from the would-be drug sellers.

Around 6:00 a.m. on May 28, 2014, Teon Katchens agreed through an online chat system to sell one ounce of marijuana for $150 to someone in Southaven, Mississippi. Later that morning, Katchens's friend, Jeremy W. Vann, drove Katchens and Katchens's three-year-old son from Memphis, Tennessee, to a parking lot in Southaven for the exchange. Neither Vann nor Katchens was armed.

Shortly after Vann arrived at the lot, his car was boxed in by unmarked civilian cars driven by undercover Southaven police officers. The officers exited their cars, and Vann reversed his car, trying to escape the cars that surrounded him. During Vann's escape attempt, Vann's car moved forward toward Sergeant Jeff Logan, who shot Vann before being knocked to the ground by Vann's car. While Logan was on the ground, and as Vann's car approached him for a second time, Lieutenant Jordan Jones fired a second shot at Vann. Vann died as a result of the shots fired by Logan and Jones. Katchens and his son survived.

The parties agree that Vann maneuvered his car in an attempt to escape, was shot first by Logan, and was shot second by Jones. The parties disagree, however, on the precise sequence and intent behind certain events between Vann's arrival at the parking lot and the moment Logan fired his weapon. The parties also disagree on whether the police officers used lights and sirens, wore

2

police vests or badges, and shouted, "Police!" thus informing Vann of their status as officers.[1]

According to the officers, in the course of Vann's efforts to escape the cars boxing him in, Vann's car slammed into Logan's and another officer's cars multiple times. As Logan was running between his own car and Jones's car away from Vann, Vann's car struck him, causing Logan to shoot in self-defense before rolling over the hood of the car and falling to the ground. In contrast, Plaintiff, who is Vann's representative, argues that rather than Vann's car striking Logan and causing him to shoot, Logan moved in front of the car and shot Vann as Vann attempted to escape through a gap between the cars. It was only then that Vann's car hit Logan. As Plaintiff puts it, the disputed central fact is therefore whether Logan ran to the opening and shot Vann to prevent him from fleeing or whether, instead, Logan was hit as he ran out of the way of Vann's car.

Plaintiff supports his account by noting that investigators found no evidence of tire tracks or burnt rubber on the pavement and the fact that any damage to the officers' cars was either minimal or pre-existent. Plaintiff also points to the testimony of Logan and Jones, both of whom agree that Vann was trying to escape. In Plaintiff's view, this concession forecloses the notion that

---

[1] Although Katchens states in a sworn affidavit that he did hear Logan yell, "Freeze!" and that Vann revved the engine of his car at some point after that, he also states that he never heard anyone yell, "Police!" and he did not know that the two men in front of Vann's car were police officers. In fact, in his affidavit, Katchens states he "remember[s] thinking that the guy [Vann and him] were supposed to meet had set [them] up to be robbed." Plaintiff further supports the position that Vann and Katchens did not know that the people surrounding them were police officers with the fact that the officers were in plain clothes, the fact that neither Jones nor Logan wore a police vest, and additional testimony from Katchens that he did not see any flashing lights on either of the vehicles in front of Vann's car and never heard a siren.

No. 16-60561

Vann intentionally drove toward Logan and instead suggests Logan purposefully placed himself between Vann's car and his escape route.

Plaintiff sued the officers and the City of Southaven under 42 U.S.C. § 1983, claiming that the officers violated Vann's Fourth Amendment right to be free from unreasonable seizure, excessive force, and deadly force, and that the City had failed properly to train its officers and had permitted an official practice or custom that violated the constitutional rights of the public at large. The officers and the City simultaneously moved for summary judgment.[2]

The district court granted the officers' and the City's summary-judgment motion. With respect to the officers, the district court concluded that Plaintiff failed to show the violation of a clearly established right under either factual scenario: Logan attempting to dodge Vann's oncoming car or Logan attempting to stop Vann from fleeing.[3] The district court concluded that Plaintiff's alleged causes of action against the City were insufficient, first, because Plaintiff failed to show an underlying constitutional violation according to clearly established law, and, second, because he failed to bring sufficient evidence or make adequate arguments regarding a particular policy that led to the events at issue. Plaintiff now appeals.

## II.

"This court reviews de novo the district court's resolution of legal issues on a motion for summary judgment on the basis of qualified immunity." *Hanks*

---

[2] The City and the officers were and continue to be represented by the same counsel in single briefs and motions.

[3] Though acknowledging Logan's and Plaintiff's differing accounts and claiming to accept Plaintiff's account, the district court concluded it was unclear that Logan "did anything other than his job duties required." *Vann v. City of Southaven*, 199 F. Supp. 3d 1129, 1143 (N.D. Miss. 2016). In the district court's view, "if criminals came to believe that police officers would simply let them escape if they violently resisted arrest, . . . there would be many more suspects crashing their vehicles against police cars rather than quietly submitting to arrest." *Id.*

*v. Rogers*, 853 F.3d 738, 743 (5th Cir. 2017) (quoting *Griggs v. Brewer*, 841 F.3d 308, 311 (5th Cir. 2016)).  Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.* (quoting *Griggs*, 841 F.3d at 311–12); *see also McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002) (en banc).  "[W]e view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Hanks*, 853 F.3d at 743 (quoting *Griggs*, 841 F.3d at 312); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) ("Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant . . . .").

"A qualified immunity defense alters the usual summary judgment burden of proof.  Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law."  *Hanks*, 853 F.3d at 744 (citation omitted) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)).

### III.

Because there are genuine disputed issues of material fact regarding Logan's actions, we vacate the district court's grant of summary judgment to Logan.[4]  The central disputed fact is whether Logan ran to the opening and shot Vann to stop him from fleeing or whether Logan ran between the cars to get out of Vann's way and then shot Vann because Vann was going to hit him.  Viewing the evidence in the light most favorable to Plaintiff, this fact is in dispute.

---

[4] *See White v. Pauly*, 137 S. Ct. 548, 553 (2017) (Ginsburg, J., concurring) (clarifying that the qualified-immunity analysis as to one officer at the scene does not decide the question for other officers at the scene).

No. 16-60561

It is also material.  The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).  "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *al-Kidd*, 563 U.S. at 742).  In *Brosseau v. Haugen*, 543 U.S. 194 (2004), for example, the specific conduct at issue was "shoot[ing] a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight."  543 U.S. at 200.  In *Mullenix*, a qualified-immunity case involving a fatal shooting, the relevant circumstances included "a reportedly intoxicated fugitive, set on avoiding capture through high-speed vehicular flight, who twice during his flight had threatened to shoot police officers, and who was moments away from encountering an officer . . . ."  136 S. Ct. at 309.

In this case, with respect to the reasonableness of Logan's conduct, the district court, to conclude that Logan's conduct was reasonable, primarily considered the fact that Logan was in the way of Vann's accelerating car when he shot at Vann.  *Vann v. City of Southaven*, 199 F. Supp. 3d 1129, 1140, 1143, 1146 (N.D. Miss. 2016).  This conclusion, the district court suggested, is supported by this circuit's precedent.  *See, e.g.*, *id.* at 1147 (citing *Hathaway v. Bazany*, 507 F.3d 312 (5th Cir. 2007)) ("The Fifth Circuit has thus made it clear that, in situations where an officer feels threatened by an oncoming vehicle and has little time to react, courts owe a great deal of deference to that officer's decision regarding whether . . . to fire his weapon.").

When viewing the facts in the light most favorable to Plaintiff, however, Logan's running into the way of Vann's car and shooting at Van are not distinct acts.  Plaintiff contends that "Logan *ran to the opening and shot Vann* to prevent him from fleeing." *Id.* at 1134 (emphasis added) (quoting Pl.'s Br. at

6

No. 16-60561

6–7). As Logan himself admits, describing the moment when he ran, turned to face Vann, and shot, "it all happened at one time."[5] *Id.* at 1132 (quoting Defs.' Br. at 12–14). Viewing these steps together as the relevant conduct, before a car was headed in Logan's direction, Logan was confronted with the following situation: whether to shoot a misdemeanor suspect quickly maneuvering his car to escape surrounding cars and driving in the direction of an area with no officers.[6]

---

[5] The following is the relevant portion of Logan's deposition:

Q. Let's take it this way. You're – are you running I guess between your vehicle and the Jones vehicle? Are you walking? Describe it.

A. It's kind of a run. I'm not really a runner. I've had surgery. I was old. I wouldn't call it running, but I was going as fast as I could. You may call it a run, yes, sir.

Q. So you're going as fast as you can. What happens next?

A. I know – I mean, I'm at kind of like an angle. I can see this is – he's fixing to hit me and push me forward. So I turn and face him; and as a reaction, don't know why I did it, instead of two handed grip and shoot like you're supposed to, my left hand hit the hood of the car at the same time as I – I mean, it all happened at one time; and I fired one round into the windshield.

Furthermore, while Katchens's affidavit seems to suggest by the order of his statements that Logan yelled, "Freeze!" after Logan was already in front of Vann's car, this timing is inconsistent with Logan's description of the relevant events. During his deposition, Logan stated that he yelled, "Police Department," before Vann allegedly backed his car into another officer's car and before he ran to the spot at which he was hit by Vann's car. In the excerpts provided from Logan's deposition, Logan does not mention yelling, "Freeze!" at any point between running in the way of and shooting at Vann. He also does not mention hearing the engine rev at this time. In fact, in a signed statement by Logan, he states that he heard the car's engine rev *before* he started to move out of its way.

[6] The dissenting opinion disagrees as to the "moment" that is relevant to our inquiry. In *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481 (5th Cir. 2001), we held that "[t]he excessive force inquiry is confined to whether the [officer] was in danger *at the moment of the threat* that resulted in the [officer] shooting [an individual]." 246 F.3d at 493 (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992)). But, here, Plaintiff argues that Logan never faced a threat. And whether he did face a threat before running and shooting Vann is a factual dispute. This is an important distinction, which was noted in *Fraire*, the case on which *Bazan* relied. *See* 957 F.2d at 1276. We noted in *Fraire* that "[a]t the moment of the shooting, [the officer did] not appear to have been trying to hinder [the suspect's] escape. Rather, as [the officer] avers, he clearly appears to have been trying to prevent his own serious injury or death." *Id.* Here, it is the former rather than latter.

No. 16-60561

It has long been settled that "[w]here [a fleeing] suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Put simply, "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Id.* The district court here rejected *Garner*'s application, determining instead that "a more particularized, and hence more relevant" example is required to guarantee that "[t]he contours of the right . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Vann*, 199 F. Supp. 3d at 1138 (citing *Brosseau*, 543 U.S. at 199). This court has held, however, that *Garner*'s proposition "holds as both a general matter and in the more specific context of shooting a suspect fleeing in a motor vehicle." *Lytle v. Bexar Cty.*, 560 F.3d 404, 417–18 (5th Cir. 2009) (citations omitted). The outcome in the present case therefore depends on the facts.

On the one hand, if Logan was running away from Vann's moving car and thus being threatened by it at the time he shot Vann, this case could fall in line with other car-related cases where courts have determined that a reasonable officer would have resorted to deadly force. *See, e.g.*, *Mullenix*, 136 S. Ct. at 311–12 (holding the officer acted reasonably where the suspect "was speeding towards a confrontation with officers he had threatened to kill"); *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2021–22 (2014) (holding the officer acted reasonably where the suspect's reckless driving "posed a grave public safety risk"); *Scott v. Harris*, 550 U.S. 372, 385–86 (2007) (holding the officer acted reasonably where the car chase "posed a substantial and immediate risk of

---

For the same reason, this decision does not implicate the "provocation doctrine," which, as the dissenting opinion explains, is "a theory that an earlier Fourth Amendment violation can transform an otherwise reasonable use of force into a constitutional violation."

8

serious physical injury to others"); *Brosseau*, 543 U.S. at 197–201 (holding the officer did not violate clearly established law when faced with the following situation: "whether to shoot a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight").

On the other hand, this case could fall into a group of "factually distinct" cases involving "suspects who may have done little more than flee at relatively low speeds." *Mullenix*, 136 S. Ct. at 312 (citing *Walker v. Davis*, 649 F.3d 502, 503 (6th Cir. 2011); *Kirby v. Duva*, 530 F.3d 475, 479–80 (6th Cir. 2008); *Adams v. Speers*, 473 F.3d 989, 991 (9th Cir. 2007); *Vaughan v. Cox*, 343 F.3d 1323, 1330–31, 1330 n.7 (11th Cir. 2003)).  As this court has noted, even if a suspect is in a car, the Supreme Court has not declared "open season on suspects fleeing in motor vehicles." *Lytle*, 560 F.3d at 414.

"[C]ourts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions." *Tolan*, 134 S. Ct. at 1866. Here, we take such care.  While it is possible that Logan fired at Vann because Vann's accelerating car posed a threat to him and the other officers, evidence also supports the possibility that, absent a threat, Logan ran into the way of Vann's car and shot Vann to prevent him from successfully fleeing.  Our case law establishes that a reasonable officer would not shoot a fleeing suspect where the suspect poses no threat to the officer or others.[7]  Thus, resolving this disputed fact is crucial to the summary-judgment analysis.

---

[7] With respect to Plaintiff's burden of showing that Logan violated Vann's clearly established rights, *see Cass v. City of Abilene*, 814 F.3d 721, 732 (5th Cir. 2016), Plaintiff satisfied his burden.  First, *Garner*'s general prohibition against using deadly force in non-threatening situations gave Logan a fair and clear warning against running in the way of and shooting at Vann where he posed no threat to Logan or others in the area.  *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in [some] instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific

No. 16-60561

IV.

The district court granted summary judgment to the City as to Vann's municipal liability claims. Finding no error in the district court's analysis regarding the City, we AFFIRM.

V.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to the City, Jones, Yoakum, and Long; VACATE the district court's grant of summary judgment to Logan; and REMAND for further proceedings consistent with this opinion.

---

conduct in question, even though 'the very action in question has not previously been held unlawful.'" (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987))). Second, at the district court level, Plaintiff cited to *Godawa v. Byrd*, 798 F.3d 457 (6th Cir. 2015), in which the Sixth Circuit denied qualified immunity based on the open possibility that the officer shot the suspect attempting to flee in a car at a low speed where the officer was not presented with "an actual and imminent threat." 798 F.3d at 468. While questioning *Godawa*'s factual relevance, the district court did not engage with *Godawa* because the decision was issued after the shooting in this case. *Vann*, 199 F. Supp. 3d at 1137 n.4. Nonetheless, the Sixth Circuit's analysis and conclusion in *Godawa* were not novel. The *Godawa* court discussed the Sixth Circuit's opinion in a similar case, *Smith v. Cupp*, 430 F.3d 766 (6th Cir. 2005), just as this court did in reaching the same conclusion in *Lytle* in 2009. *See Godawa*, 798 F.3d at 464–65; *Lytle*, 560 F.3d at 416. Plaintiff thus successfully showed that the unlawfulness of Logan's actions was apparent in light of pre-existing law. *McClendon*, 305 F.3d at 332 ("[T]he unlawfulness of the state official's actions 'must be apparent' in light of pre-existing law to preclude the official from invoking qualified immunity.").

10

No. 16-60561

HAYNES, Circuit Judge, concurring in part and dissenting in part:

I concur in the judgment of the court as to the City, Jones, Yoakum, and Long. The majority opinion's denying Logan qualified immunity under the undisputed facts here, however, effectively creates a "stand down" rule for law enforcement. I respectfully dissent from the judgment vacating and remanding as to Logan.

This is an excessive force case under the Fourth Amendment. In such cases, "a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474 (2015). The majority opinion primarily recites the events from the perspective of Vann, the decedent. Katchens, the surviving adult in Vann's car, originally gave a statement that supported the police officers' account of the events in question. After speaking with Plaintiff's investigator, he gave an affidavit more favorable to Plaintiff that contradicts several of his original statements. While there were a number of challenges to that affidavit in the district court, I will assume arguendo that we should consider it. Nonetheless, even doing so, several key undisputed facts remain. I add a few of those undisputed facts in order to properly portray what happened from the perspective of Logan, the officer.

Early in the morning of May 28, 2014, one of Logan's colleagues received a report from a confidential informant. The CI had arranged a meeting with a drug dealer in a convenience store parking lot to purchase one ounce of marijuana. Logan was asked to be part of a team of five officers who planned to bust the dealer. Neither Logan nor anyone on the team had any indication about how much drugs the dealer had on him, who would be with him, or whether he would be armed. When they arrived at the meet-up point, the CI approached from the behind the store, moving to the front of it, while officers

11

staked out the parking lot in their vehicles.  Waiting in a car were two men (Vann, the driver, and Katchens, the passenger), one of whom waved to the CI to come to the car.  At that point, Logan and others stepped in to arrest the dealers.  They used their vehicles to corner in the dealers' vehicle, leaving it only one escape route.

The precise details and sequence of events are disputed from there.  Because we are reviewing a motion for summary judgment, I accept the evidence in the light most favorable to Plaintiff.  At least one of the officers wore a vest that said "POLICE" on it.  Plaintiff contends (as the majority opinion puts it) that Logan "purposefully placed himself between Vann's car and [Vann's] escape route."  Maj. Op. at 4.  Once there, Logan yelled, "Freeze!" loudly enough that it could be heard in Vann's car.  In response, Vann revved the engine.[1]   Plaintiff's Amended Complaint, which binds the plaintiff,

---

[1] Katchens' affidavit makes these facts abundantly clear:

14. The man in the red shirt [i.e., Logan] was leaning at about the center of the hood and I [i.e., Katchens] think he may have had one hand on the hood and in his other hand he had the gun pointed at us.  The gun was about three feet away from us.

15. I did hear the man in the red shirt yell FREEZE!

16. I never heard anyone yell POLICE! Just FREEZE!

17. I put my hands up in the air.  [Vann] looked scared and I was scared too.

18. This next part happened very fast, [sic] [Vann] tapped the gas and the engine revved but the car did not move and I told [Vann] "stop fool" meaning don't rev the engine.

Later in the same affidavit Katchens acknowledged that one of the officers at the scene "had on a vest that said POLICE on it," even if Katchens did not see him originally.

The district court ignored Katchens' affidavit because it directly contradicted Katchens' earlier statements that the officers approached with sirens on and that Katchens told Vann in the moment that the CI "done called the police on you." *See Vann v. City of Southaven*, 199 F. Supp. 3d 1129, 1145 (N.D. Miss. 2016).  In contrast, I am assuming arguendo that we must consider it over his earlier statements.

The majority opinion, however, considers Katchens' affidavit only from Katchens' perspective.  Maj. Op. at 3 n.1.  The proper analysis is to assume the facts in Katchens' affidavit are true and then determine from Logan's perspective whether his actions were reasonable.  Whether Katchens or Vann subjectively believed the police were ordering them to stop is irrelevant.

acknowledges that "Vann attempted to flee" by driving away and that Logan was then "struck by the vehicle . . . ." At some moment during this escape attempt, when Logan was in front of the vehicle that ultimately struck him, Logan fired his weapon.

This expanded summary shows Logan used reasonable force. Analyzing excessive force claims "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *See Graham v. Connor*, 490 U.S. 386, 396 (1989).

Those factors all favor Logan, taking as true the facts alleged by Plaintiff but viewing them from the perspective of a reasonable officer in Logan's shoes. Illegally dealing controlled substances is a serious crime. *See* 21 U.S.C. §§ 841(a), 846 (criminalizing distribution and conspiracy to distribute marijuana); Miss. Ann. Code § 41-29-139(b)(2)(A) (criminalizing possession with intent to distribute marijuana); *see also United States v. Christie*, 825 F.3d 1048, 1058–59 n.4 (9th Cir. 2016) (citing a memorandum from the Department of Justice that "affirms DOJ's 'commitment to enforcing the CSA consistent with' Congress's judgment 'that marijuana is a dangerous drug and that the illegal distribution and sale of marijuana is a serious crime that provides a significant source of revenue to large-scale criminal enterprises, gangs, and cartels.'" (internal brackets omitted)); *United States v. Nunez*, 386 F. App'x 757, 759 (10th Cir. 2010) ("Nunez's violation offense—possession with intent to distribute marijuana—is a serious crime which, if prosecuted in federal court, would carry a statutory maximum penalty of five years' imprisonment for quantities less than 50 kilograms."). Vann attempted to evade arrest by driving his vehicle away. Even in Plaintiff's account, Vann posed an immediate

threat to Logan's and the other officers' safety.  Vann and Logan were surrounded by vehicles and police officers, at least one of whom was clearly identified as law enforcement.  (Even if Vann may not have seen that identification, Logan could reasonably conclude that he did.)  In these tight quarters, Logan yelled, "Freeze!" only to be met by Vann revving his engine.  Ultimately, Logan faced a vehicle that indisputably went on to hit him.  Thus, even accepting that the circumstances were as Plaintiff presented them, Logan's use of his firearm to protect himself and others was reasonable force.

The majority opinion concludes that Logan is not entitled to summary judgment because of a dispute over facts.  I agree with the well-worn statement that if there are material disputes of fact, then summary judgment is improper.  However, the key word here is "material."  Not all factual disputes qualify.  This one does not.

The majority opinion intently focuses on a fact that our precedent says is irrelevant—why Logan was in front of Vann's vehicle in the first place.  The cases cited from the Supreme Court and our court by the majority opinion and the parties do not hold that an officer's actions prior to the use of deadly force are relevant to the inquiry of whether the use of deadly force was reasonable.  Quite the opposite: "The excessive force inquiry is confined to whether the [officer] was in danger *at the moment of the threat* that resulted in the [officer] shooting [an individual]."  *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 493 (5th Cir. 2001); *see also Harris v. Serpas*, 745 F.3d 767, 772–73 (5th Cir. 2014) (rejecting the argument that officers' decision to "breach[ an individual's] bedroom door yelling commands and firing taser darts at him" was relevant to qualified immunity analysis in a deadly force suit even though the officers' actions caused the individual to become "agitated and threatening"); *Rockwell v. Brown*, 664 F.3d 985, 993 (5th Cir. 2011) ("At the

time of the shooting, [the suspect] was engaged in an armed struggle with the officers, and therefore each of the officers had a reasonable belief that [the suspect] posed an imminent risk of serious harm to the officers. We need not look at any other moment in time."); *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992) ("[R]egardless of what had transpired up until the shooting itself, [the suspect's] movements gave the officer reason to believe, *at that moment*, that there was a threat of physical harm." (emphasis added)).

Indeed, the majority opinion runs afoul of the Supreme Court's reasoning rejecting the Ninth Circuit's "provocation doctrine," a theory that an earlier Fourth Amendment violation can transform an otherwise reasonable use of force into a constitutional violation. *See County of L.A. v. Mendez*, 137 S. Ct. 1539, 1546–48 (2017). The Court reaffirmed that an officer's actions are judged at the time the force is used, based on then-existing circumstances. *Id.* at 1546–47 ("Excessive force claims . . . are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." (ellipsis in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 207 (2001)). The Court rejected the provocation doctrine even though the Ninth Circuit limited the doctrine to reckless or intentional behavior by officers. *Id.* at 1548. The majority opinion also runs afoul of many qualified immunity cases where one could say that, had the officer acted differently, he or she might not have been in "harm's way." *See, e.g., Elizondo v. Green*, 671 F.3d 506, 511 (5th Cir. 2012) (DeMoss, J., concurring) (describing two then-recent cases where the officers from the same department took actions that accelerated rather than decelerated the crisis leading to fatal shootings and yet the officers received qualified immunity). Whether Logan "purposefully placed himself" in harm's way is thus irrelevant to our decision.

No. 16-60561

The majority opinion tries to collapse the inquiry by "viewing these steps [i.e., the decision to get in front of the vehicle and the decision to shoot] together as the relevant conduct." Maj. Op. at 7.[2] While the totality of the circumstances informs the officer's knowledge relevant to the potential arrestee, whether deadly force is excessive depends on the moment at which it is used. The majority opinion suggests that the legal question is "whether

---

[2] The majority opinion also seemingly tries to transmute this legal issue into a factual one by claiming that the evidence can be interpreted so that Logan's alleged running in front of the car and shooting were "not distinct acts." *See* Maj. Op. at 6. But as Katchens' affidavit confirms, Logan at the very least yelled, "Freeze!" and heard a revving engine before he fired. (On the officers' versions of the events, Vann acted far more aggressively and Logan never moved in front of the vehicle.) No evidence even implies that Logan's alleged movement in front of the vehicle and his shot occurred at the same moment.

The majority opinion's citations do not support interpreting these alleged actions as a single moment. It first cites a statement from Plaintiff's brief in the district court that "Logan ran to the opening and shot Vann to prevent him from fleeing." Maj. Op. at 6–7 (emphasis omitted). Regardless of how that statement is interpreted, it was made in a brief without citation to any record evidence supporting it, which means we must ignore it. *See Garcia v. LumaCorp, Inc.*, 429 F.3d 549, 555 (5th Cir. 2005) ("Needless to say, unsubstantiated assertions are not competent summary judgment evidence." (internal quotation marks omitted) (quoting *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir. 1993))).

The majority opinion also cites a statement from Logan's deposition that "it all happened at one time." The majority opinion depicts this statement as applying to "the moment when [Logan] ran, turned to face Vann, and shot." Maj. Op. at 7. The biggest hole in that citation is that Logan maintained that he was in front of the vehicle because Vann positioned the vehicle toward him; any running Logan did was only to get out of the way of the vehicle, not into its path. Thus, his deposition testimony could not support the notion that his (1) decision to run in front of the car and (2) decision to fire happened at the same time, because he never said he decided to run in front of the car.

But even assuming Logan had admitted that he decided to run in front of the car, his statement does not support the majority opinion's reasoning. The "it" in "it all happened at one time" was the car making contact with Logan and Logan firing his weapon—not his decision to move in front of the car and his decision to fire. The excerpt of the deposition included in the majority opinion makes this clear. Logan indicated that he began running; the attorney deposing him then asked, "What happens next?" indicating that Logan's next answer followed the beginning of his run. Then, as Logan described the car coming down on him, he reported that "my left hand hit the hood of car at the same time" and then stopped mid-sentence to re-phrase his sentence, "I mean, it all happened at one time; and I fired one round into the windshield."

The majority opinion grasps at other variations between Logan's description of the events and Katchens' affidavit, but no matter whose story is believed, Logan faced a vehicle acting aggressively, which ultimately hit him, when he fired.

No. 16-60561

[Logan was permitted] to shoot a misdemeanor suspect[3] quickly maneuvering his car to escape surrounding cars and driving in the direction of an area with no officers." Maj. Op. at 7.  This framing puts Logan out of the car's path by resetting the clock to before Logan allegedly tried to close off the vehicle's escape.  In other words, the majority opinion wants to ask whether Logan's decision to get in front of the car was reasonable, not whether his use of force was. *See Bazan*, 246 F.3d at 493.

A recent unpublished decision from our court demonstrates well the proper analysis. *See Davis v. Romer*, 600 F. App'x 926 (5th Cir. 2015) (per curiam).  In that case, the officer reacted to a driver's failure to obey a command to exit a vehicle. *Id.* at 927–28.  Rather than let the truck go, the officer decided to jump onto its running board (a metal step attached to the truck) as the driver pulled away. *Id.* at 928.  When the driver refused to stop the truck, the officer "pulled his gun from the holster and fatally shot" the driver. *Id.*  The panel rejected the argument that the officer "caused the danger by jumping on the running board of the vehicle.  In other words, [the driver's argument was] that instead of jumping on the vehicle [the officer] should have moved away from the fleeing vehicle." *Id.* at 930.  Relying on some of the same authorities I have cited above, the panel concluded that the reasonableness of force had to be judged based on when the officer was on the moving vehicle, not based on whether he should have been there in the first place. *See id.* at 929–31.  We should follow that same analysis here.

---

[3] Again, while the amount to be sold pursuant to the staged buy was one ounce, there is no indication that the officers reasonably believed Vann's drug dealing to be limited to this one ounce.  Furthermore, possession with intent to sell even one ounce of marijuana is punishable as a felony under state law, including up to three years of imprisonment. *See* Miss. Code. Ann. § 41-29-139(b)(2)(A).

The majority opinion effectively adopts a "stand down" rule for law enforcement. Sadly, officers are required to put themselves in harm's way in a lot of situations where most people would run away. Society lauds honest police officers precisely because they put themselves in harm's way by engaging dangerous people to keep us safe. It is hard to imagine that the majority opinion is suggesting officers are required to stand down or face a lawsuit. But to require Logan to stand trial for his alleged decision to step in front of Vann's vehicle does just that.

Even assuming, arguendo, that Logan used excessive force, the question then becomes, was there law that put Logan on notice that shooting in this situation violated the constitution? The majority opinion says this law should not be viewed at a "high level of generality" but turns that against Logan, essentially requiring *him* to find a case in *his* favor. The law is just the opposite: it is Plaintiff who must find a case in his favor that does not define the law at a "high level of generality." *Cass v. City of Abilene*, 814 F.3d 721, 732–33 (5th Cir. 2016) (per curiam). In the district court, he cited nary a pre-existing or precedential case. That alone dooms his case here. *See id.* at 733 (granting qualified immunity even though the defendant did not cite any cases in his favor to the district court because plaintiff bears the burden of showing specific law on point). Even on appeal, he fails to cite a case on point from this court or the Supreme Court that helps his case, instead relying on an out-of-circuit case. *See Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc) ("Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established." (citing *Wilson v. Layne*, 526 U.S. 603, 617–18 (1999))).

No. 16-60561

Supreme Court precedent provides no support to Plaintiff and, indeed, counsels the opposite result. All of the recent cases from the Supreme Court involving suspects in moving vehicles have found qualified immunity, even despite disputes over facts: *Mullenix v. Luna*, 136 S. Ct. 305 (2015); *Plumhoff v. Rickard*, 134 S. Ct. 2012 (2014); *Scott v. Harris*, 550 U.S. 372 (2007); *Brosseau v. Haugen*, 543 U.S. 194 (2004). Far from clearly establishing (before or after this incident in 2014) a constitutional norm that Logan violated, the Court ruled in favor of the officers in these cases.

The majority opinion is similarly unhelpful. It cites the following cases: *Tennessee v. Garner*, 471 U.S. 1 (1985); *Tolan v. Cotton*, 134 S. Ct. 1861 (2014); *Lytle v. Bexar Cty.*, 560 F.3d 404 (5th Cir. 2009).[4] None of these cases involved a moving vehicle except *Lytle*,[5] a case which the Supreme Court called into question in *Mullenix* and cannot be squared with the more recent decisions in *Mullenix* and *Plumhoff*. *See Mullenix*, 136 S. Ct. at 310 ("The Court has thus never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity."); *Plumhoff*, 134 S. Ct. at 2022 ("Under the circumstances at the moment when the shots were fired, all that a reasonable police officer could have concluded was that [the suspect] was intent on resuming his flight and

---

[4] The majority opinion also discusses the Sixth Circuit case of *Godawa v. Byrd*, 798 F.3d 457 (6th Cir. 2015), cited by the plaintiff, but decided *after* the events in question. Even assuming arguendo that *Godawa* relied upon established Sixth Circuit precedent, we have made clear that out-of-circuit precedent must establish a "robust" consensus to be considered "clearly established." *Morgan*, 659 F.3d at 371–72 (requiring us to be able to point to "robust consensus of persuasive authority" to establish the "contours" of a right). One circuit is hardly that. *Lincoln v. Turner*, No. 16-10856, 2017 U.S. App. LEXIS 21652, at *25 (5th Cir. Oct. 31, 2017) (concluding that the opinions of two other circuits, while perhaps indicating an emerging trend, are insufficient to establish "clearly established law").

[5] *Tennessee v. Garner*, 471 U.S. 1, 11 (1985), involved a felon fleeing on foot, and in *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014), the parties in question had exited the vehicle and were standing on the driveway at the time of the disputed incident.

19

that, if he was allowed to do so, he would once again pose a deadly threat for others on the road.").

However, even assuming *Lytle* survives these cases, it does not support the majority opinion's decision as to Logan. As we acknowledged then, if the vehicle had presented a threat of harm, the officer would "likely [have been] entitled to qualified immunity. This is due to the threat of immediate and severe physical harm that the reversing [vehicle] likely posed to [the officer] himself." *Lytle*, 560 F.3d at 412. *Lytle*, therefore, does not help us here because the fleeing person there was not in a situation where he would have been an immediate threat to anyone. *See Sanchez v. Edwards*, 433 F. App'x 272, 276 (5th Cir. 2011) (per curiam) ("We based our decision [in *Lytle*] on evidence suggesting that the officer was three-to-four houses away from the vehicle when he fired his weapon and that the vehicle was moving away from, rather than towards, him at the time."); *see also Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007) ("The reasonableness of an officer's use of deadly force is therefore determined by the existence of a credible, serious threat to the physical safety of the officer or to those in the vicinity.").

The majority opinion tries to nestle this case into a single line from *Mullenix* categorizing certain cases as "involving 'suspects who may have done little more than flee at relatively low speeds.'" Maj. Op. at 9 (quoting *Mullenix*, 136 S. Ct. at 312). That line from *Mullenix* addressed our opinion that was the subject of the certiorari petition and had denied qualified immunity based on what the Court found to be "factually distinct" cases. *See Mullenix*, 136 S. Ct. at 312 ("These cases shed little light on whether the far greater danger of a speeding fugitive threatening to kill police officers waiting in his path could warrant deadly force."). *Mullenix* did not suggest those cases were correct. Nor do those cases distinguished by *Mullenix* create clearly established law making

No. 16-60561

Logan's actions in this case unconstitutional; not one of them involves an officer who was indisputably in the path of a vehicle at the time he fired his weapon.

In sum, even assuming the facts in a light most favorable to Plaintiff, I conclude that, from the perspective of what Logan knew and could have reasonably believed, he used reasonable force. At the very least, Logan is entitled to qualified immunity because no clearly established law notified him that his actions violated the Constitution. Accordingly, I respectfully dissent from the portion of the judgment denying qualified immunity and remanding the case as to him.